MELVA LEE, Employee, Plaintiff v. WAKE COUNTY, Employer, and SELF-INSURED (COMPENSATION CLAIMS SOLUTIONS, Servicing Agent), Defendant

No. COA03-1164

(Filed 6 July 2004)

**1. Appeal and Error— appealability—interlocutory order— abandonment of issue during oral argument**

Although plaintiff argued that the Industrial Commission erred in a workers' compensation case by reviewing a deputy commissioner's order on the grounds that defendants appealed from an interlocutory order that did not affect a substantial right, plaintiff expressly abandoned this issue during oral argument of this case.

**2. Workers' Compensation— validity of memorandum of agreement—notice—submission of formalized compromise settlement agreement**

The Industrial Commission erred in a workers' compensation case by concluding that the parties' memorandum of a mediated

settlement agreement was invalid and by failing to order the parties to submit a formal compromise settlement agreement for approval by the Commission, because: (1) it could not reasonably be inferred that the settlement conference was attended by a representative of defendant county who lacked authority to negotiate the agreement reached by the parties, and the 2001 budget ordinance did not describe the scope or extent of the county manager's authority on 1 May 2001; (2) an act that is otherwise within the statutory powers of a governmental entity is not ultra vires simply because it is undertaken by a governmental or municipal employee who acts outside the terms of his employment, and the county in this case has authority to enter into settlement agreements with workers' compensation claimants; (3) plaintiff was not charged with notice of the limitations and restrictions on the authority of defendant's agent, and N.C.G.S. § 159-28 did not put plaintiff on constructive notice that an agreement would have to be approved by others; and (4) N.C.G.S. § 159-28 does not require that a memorandum of agreement be accompanied by a county finance manager's pre-audit certificate to enable the Commission to direct the submission of a formalized compromise settlement agreement.

Appeal by plaintiff from opinion and award entered 17 June 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 20 May 2004.

*Patterson, Dilthey, Clay, Bryson & Anderson, L.L.P., by Ronald C. Dilthey and Katherine E. Downing, and Lucas, Bryant, Denning & Edwards, P.A., by Robert V. Lucas, for plaintiff-appellant.*

*Brooks, Stevens & Pope, P.A., by Kathlyn C. Hobbs and Bambee N. Booher, for defendant-appellees.*

LEVINSON, Judge.

Plaintiff (Melva Lee) appeals from an opinion and award of the Industrial Commission denying plaintiff's motion to enforce a memorandum of agreement. We reverse and remand.

The record establishes the following: Plaintiff was employed by defendant Wake County. On 10 November 1996 she suffered an injury by accident arising out of her employment when she was assaulted by an inmate of the Wake County Jail. The parties subsequently entered

**LEE v. WAKE CTY.**

[165 N.C. App. 154 (2004)]

into a Form 21 agreement for payment of disability benefits. On 1 May 2001, the parties reached a mediated settlement resolving the issues presented by plaintiff's claim, and a written memorandum of agreement was signed by representatives of all parties.

The memorandum of agreement provided in pertinent part that defendants would pay plaintiff a lump sum of $750,000 and would pay certain medical and disability benefits, and that defendants would prepare a formal clincher agreement incorporating the terms of the settlement agreement and releasing defendants from all workers' compensation liability. The memorandum of agreement contained no contingencies or provisional terms such as the approval of its terms by the Wake County Board of County Commissioners. Thereafter, defendants withdrew their consent to the memorandum of agreement and refused to prepare a formal settlement agreement for presentation to the Commission for approval.

On 9 August 2001 plaintiff moved to compel enforcement of the agreement. At a hearing before deputy Commissioner Stephen T. Gheen, defendants contended that the entire agreement was invalid because their representative at the settlement conference had not been given authority to negotiate a settlement agreement for more than $100,000. In support of this argument, defendants introduced a Wake County Budget Ordinance, adopted several weeks **after** the parties executed the memorandum of agreement, which authorized the county manager to make payments of up to $100,000 in "settlement of any liability claims against the County or against any of its officers or employees as provided by Resolution of May 20, 1995." This May 20, 1995 Resolution was not introduced into evidence and has not been made a part of the record on appeal.

On 3 June 2002 the deputy commissioner issued an "Interlocutory opinion and award." The Commissioner found that all parties had signed the memorandum of agreement; that the agreement resolved the substantive issues in the case; that the agreement contained no contingencies; and that defendants' representatives had not informed plaintiff of any limitations on their authority to enter into a memorandum of agreement. The deputy commissioner concluded the memorandum of agreement was valid and enforceable, notwithstanding defendant Wake County's assertion that its representative lacked authority to negotiate a settlement for more than $100,000.

In reaching this conclusion, the deputy commissioner construed several provisions of the North Carolina Industrial Commission Rules

LEE v. WAKE CTY.

[165 N.C. App. 154 (2004)]

for Mediated Settlement and Neutral Evaluation Conferences ("RMSC"). First, Rule 4(a)(1)(D) states that:

> Any party that is a governmental entity shall be represented at the conference by an employee or agent . . . who has authority to decide on behalf of such party whether and on what terms to settle the action; provided, if under law, proposed settlement terms can be approved only by a board, the representative shall have authority to negotiate on behalf of the party and to make a recommendation to that board.

Secondly, Rule 4(d) states in part that when parties reach an agreement at a settlement conference, they "shall reduce the agreement to writing, specifying all the terms of their agreement bearing on the resolution of the dispute before the Industrial Commission, and sign it along with their counsel." The deputy commissioner construed Rule 4(a)(1)(D), requiring a governmental entity to be represented at a settlement conference by an agent with authority to reach a binding agreement, "in *pari materia* with Rule 4(d), the latter requiring that '*all of the terms of [the] agreement* bearing on the resolution of the dispute' be reduced to writing," and concluded that "Wake County's representative acted with apparent authority to fully negotiate and authorize the settlement reached."

Although the deputy commissioner ruled that the memorandum of agreement was a valid agreement, he did not rule on plaintiff's motion to enforce the agreement. Instead, the Commissioner noted that under both Rule 4(d) and N.C.G.S. § 97-17, if a settlement is reached pursuant to a mediation conference, reduced to writing, and signed by the parties, it must be submitted to the Commission for approval. Accordingly, he directed defendants to prepare and submit a formal Compromise Settlement Agreement for his consideration as to whether or not to approve the settlement.

Defendants appealed this "interlocutory order" to the Full Commission, seeking review on the grounds that a "substantial right" was implicated. Plaintiff moved to dismiss defendants' appeal to the Full Commission on the grounds that it was interlocutory and premature. The Full Commission concluded that the interlocutory order affected a substantial right and, in a 2-1 opinion and award filed 17 June 2003, reversed the deputy commissioner's order.

In its 17 June 2003 opinion and award, the Commission concluded that Wake County's representative at the mediated settlement

conference had no authority to bind Wake County to a settlement agreement for more than $100,000. This conclusion was based on a finding that, from the language in the June 2001 Wake County budget ordinance, it could "reasonably be inferred . . . that the $100,000 limitation of authority to settle has existed in Wake County since 1995." The Commission acknowledged that defendants never disclosed to plaintiff this lack of authority and pointedly noted that:

> [t]he conduct of defendant and its representatives in this case in failing to notify plaintiff of the limited settlement authority delegated by the Board of County Commissioners was reprehensible and clearly misleading and therefore the equities undoubtedly reside with plaintiff who relied on the promises of defendant's representatives.

The 2-1 majority of the Full Commission concluded, however, that plaintiff was "charged with notice of all limitations" on the authority of defendant's representatives to enter into a settlement. The Commission further concluded that, because the representative who attended the settlement conference lacked the authority to legally bind defendant to an enforceable contract with plaintiff, the agreement itself was "*ultra vires*" and was "void and of no legal effect" and therefore unenforceable.

The Commission also held that the memorandum of agreement was invalid because it lacked a pre-audit certificate required under N.C.G.S. § 159-28.

For all these reasons, the Commission denied plaintiff's motion to compel defendant to prepare a formal Compromise Settlement Agreement for presentation to the Commission for approval. Plaintiff appeals from this order.

---

[1] Preliminarily, we note that plaintiff argues that the Commission erred by reviewing the deputy commissioner's order, on the grounds that defendants appealed from an interlocutory order that did not affect any substantial right. However, plaintiff expressly abandoned this issue during oral argument of this case. Accordingly, we do not address it.

---

[2] Plaintiff argues that the Full Commission erred by concluding that the memorandum of agreement was invalid and by failing to order the parties to submit a formal Compromise Settlement Agreement for approval. We agree.

The Commission's opinion and award was based on its conclusions that: (1) record evidence established that Wake County's agent at the settlement conference had no authority to negotiate a binding settlement over $100,000; (2) the representative's lack of authority to negotiate above a certain dollar amount rendered the agreement itself *ultra vires*; (3) plaintiff was charged with notice of any limitations on the agent's negotiating authority; and (4) the memorandum of agreement signed at a mediated settlement conference is not a valid or enforceable agreement unless a county executes and simultaneously attaches a pre-audit certificate at the same time the memorandum of agreement is signed. We consider these in turn.

We first address the Commission's conclusion that record evidence established that Wake County's agent at the settlement conference had no authority to negotiate a binding settlement over $100,000. To reach this conclusion, the Commission necessarily had to rely upon the only evidence in the record to support such a conclusion, the Wake County Budget Ordinance enacted after the memorandum of agreement was executed on 1 May 2001. This ordinance authorized the county manager to make payments of up to $100,000 in "settlement of any liability claims against the County or against any of its officers or employees as provided by Resolution of May 20, 1995." It bears repeating that the 1995 resolution was not introduced into evidence. The 2001 Budget Ordinance, standing alone, neither affirmatively describes nor reasonably informs the scope or extent of the county manager's authority on 1 May 2001. Accordingly, the Commission erred when it held it could "reasonably be inferred" that the settlement conference was attended by a representative of defendant Wake County who lacked authority to negotiate the agreement reached by the parties.

The Commission also erred in its conclusion that, if the representative of Wake County acted beyond his authority in negotiating the settlement amount, the entire agreement was *ultra vires* and was "void and of no legal effect and therefore unenforceable." An act or contract is only *ultra vires* if it is "beyond the power of the city[.]" *Bowers v. City of High Point*, 339 N.C. 413, 417, 451 S.E.2d 284, 287 (1994). "The term *ultra vires* is used to designate the acts of corporations beyond the scope of their powers as defined by their charters or acts of incorporation." *Lambeth v. Thomasville*, 179 N.C. 452, 454, 102 S.E. 775, 776 (1920). However, an act that is otherwise within the statutory powers of a governmental entity is not *ultra vires* simply because it is undertaken by a governmental or municipal employee

who acts outside the terms of his employment. For example, in *Rowe v. Franklin County*, 318 N.C. 344, 349 S.E.2d 65 (1986), hospital trustees entered into a long term employment contract after their authority to do so had been revoked by the county commissioners. The Court noted that "it is indisputable that the commissioners had statutory authority to enter into employment contracts on behalf of the hospital[,]" and therefore "[h]iring management employees is not an ultra vires act[.]" *Id.* at 349, 349 S.E.2d at 69. The Court held:

> If a corporation has authority under statute and charter to enter into a particular kind of contract, the fact that an agent of the corporation purports to bind the corporation without permission of the corporation does not make this act *ultra vires*. It merely makes this particular act one that the corporation has not authorized, even though other such acts by proper corporate agents would be binding on the corporation.

*Id.* at 349, 349 S.E.2d at 68-69 (citing *Moody v. Transylvania County*, 271 N.C. 384, 156 S.E.2d 716 (1967)). The Court analyzed the validity of the contract under principles of agency:

> [T]he issue remains whether, despite the trustees' lack of actual authority, the contract is enforceable on grounds that . . . the trustees held out to plaintiff apparent authority to act on behalf of the hospital. "When a corporate agent acts within the scope of his apparent authority, and the third party has no notice of the limitation on such authority, the corporation will be bound by the acts of the agent[.]"

*Rowe*, 318 N.C. at 350, 349 S.E.2d at 69 (quoting *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 30, 209 S.E.2d 795, 799 (1974)). *Rowe* governs the present situation. It is undisputed that Wake County has authority to enter into settlement agreements with workers' compensation claimants. As in *Rowe*, the issue is the scope of the actual or apparent authority of Wake County's representative at the settlement conference. Thus, the memorandum of agreement was not *ultra vires*, even if the county manager acted beyond his authority in negotiating a settlement for $750,000.

We also reject the Commission's conclusion that plaintiff was "charged with notice" of the limitations and restrictions on the agent's authority. If, as defendants contend, plaintiff had actual or constructive notice that the Wake County Board of Commissioners was required to approve the settlement, this would defeat their abil-

ity to enforce the agreement. In making this argument, defendants rely heavily upon the second half of Rule 4(a)(1)(D), which states that "if, *under law*, proposed settlement terms can be approved only by a board, the representative shall have authority to negotiate on behalf of the party and to make a recommendation to that board." (emphasis added).

As a preliminary matter, we easily reject defendants' contention that the second half of Rule 4(a)(1)(D), standing alone, suffices to place a workers' compensation claimant "on notice" of the possibility that a county agent's authority to settle may be operating under settlement authority limitations.

Defendants concede plaintiff did not have "actual notice" that Wake County would not be obligated to perform in the absence of approval by the Wake County Board of County Commissioners. With respect to constructive notice of, *e.g.*, statutes or ordinances establishing that "under law" an agreement reached at the conference was subject to approval of others, defendants rely upon (1) the 2001 Budget Ordinance, discussed above, and (2) the preaudit certificate provisions in N.C.G.S. § 159-28 (2003). First, as already discussed, the 2001 Budget Ordinance does not describe the scope or extent of the county manager's authority on 1 May 2001. Second, as more fully discussed below, the provisions of G.S. § 159-28 did not place plaintiff on constructive notice that an agreement would have to be approved by others. Accordingly, we reject defendants' contention that the 2001 Budget Ordinance and G.S. § 159-28 operated to place plaintiff on constructive notice that the Wake County Board of Commissioners would have to approve the settlement.[1]

Lastly, we address the Commission's conclusion that the absence of a preaudit certificate pursuant to G.S. § 159-28 defeats the Commission's authority to direct defendants to prepare a formal Compromise Settlement Agreement for approval. We agree with plaintiff that, given the current posture of this matter, the Commission could properly enforce the memorandum of agreement and order defendants to do so.

G.S. § 159-28 requires a county government to ensure that, for each obligation incurred, "an unencumbered balance remains in the

---

1. Because the record is devoid of any actual or constructive notice that the Board would have to approve the settlement, we need not address that which would suffice to place claimants like plaintiff on notice that a Board would have to subsequently approve a settlement.

appropriation sufficient to pay in the current fiscal year the sums obligated by the transaction[.]" Accordingly, it is the duty of the county finance officer to attach to each contract executed by the county "a certificate stating that the instrument has been preaudited to assure compliance with this subsection[.]" Moreover, a contract for the payment of money may not be enforced against a county unless the sufficiency of available funds has been ascertained and documented by the required pre-audit certificate. *Data Gen. Corp. v. Cty. of Durham*, 143 N.C. App. 97, 545 S.E.2d 243 (2001).

The development of a formalized workers' compensation compromise settlement agreement takes place within the structure imposed by the Industrial Commission Rules and the Industrial Commission Rules for Mediated Settlement Conferences. These rules provide for a three-stage process. First, the parties attend a mediated settlement conference: "If an agreement is reached in the mediation conference, the parties shall reduce the agreement to writing, specifying all the terms of their agreement bearing on the resolution of the dispute before the Industrial Commission, and sign it along with their counsel." RMSC Rule 4(d). Secondly, "agreements for payment of compensation shall be submitted in proper form for Industrial Commission approval, and shall be filed with the Commission within 20 days of the conclusion of the mediation conference." RMSC Rule 4(d). To be "in proper form," a compromise settlement agreement must be accompanied by, *e.g.*, copies of all pertinent medical and vocational rehabilitation records, a signed release of liability, and documents pertinent to the claimant's future earning capacity. Finally, upon submission to the Commission, "[o]nly those agreements deemed fair and just and in the best interest of all parties will be approved." Industrial Commission Rule 502(1). In this sequence of events the pre-audit certificate will naturally be executed, if at all, after the settlement conference, when the amount of the county's liability is known, and as part of the general formalizing of the documents for submission to the Industrial Commission.

We conclude that an otherwise valid memorandum of agreement is not rendered void by the fact it does not bear the requisite pre-audit certificate. In this case, the subject memorandum of agreement is an agreement to prepare a formalized settlement compromise agreement for the Commission's consideration. The current appeal therefore involves an action for specific performance, not for the payment of money. We conclude that G.S. § 159-28 does not require that a memorandum of agreement be accompanied by a county finance manager's

pre-audit certificate to enable the Commission to direct the submission of a formalized compromise settlement agreement.

But for its erroneous conclusions of law, addressed above, related to the fact defendant is a county government, the Full Commission held the instant case would be governed by the principles enunciated in *Lemly v. Colvard Oil Co.*, 157 N.C. App. 99, 577 S.E.2d 712 (2003). We agree.

We reverse the Opinion and Award of the Full Commission, and remand this case for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Judges McCULLOUGH and HUDSON concur.