***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties through the Pre-trial Agreement or otherwise at the hearing before the deputy commissioner as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant.
3. The employer was self-insured at all relevant times.
4. Plaintiff's average weekly wage was $417.29 and plaintiff's compensation rate, pursuant to N.C. Gen. Stat. § 97-1 et sec., would be $278.21.
5. Plaintiff injured her back, right arm and shoulder in the course and scope of her employment with Defendant on December 15, 2000.
6. Plaintiff has been paid, pursuant to I.C. Form 60, compensation for temporary total disability for a period beginning January 11, 2001 and ending June 28, 2001, in a lump sum of $6,677.04 by check issued May 8, 2002. In addition, plaintiff has been paid compensation for her 10 percent permanent impairment rating to her back, said compensation totaling $8,346.03, by check issued August 1, 2002.
 ***********
Based upon all of the evidence produced at the hearing, the Full Commission makes the following:
 FINDINGS OF FACTS
1. Plaintiff is a 52 year old woman with a 10th grade education. She had worked for defendant for 12 years prior to her neck injury on Friday, December 15, 2000. On that date, she felt immediate pain in her neck while stacking pallets of valentine candy at defendant's warehouse. Plaintiff could not find her boss that day to report the accident. On her next work day, Monday, December 18, 2000, plaintiff told her supervisor, Mike Kirkpatrick, about her accident.
2. Due to pain, plaintiff went to the Memorial Mission Emergency Room on Sunday, December 17, 2000. On December 18, 2000, defendant directed plaintiff to see the company doctor, Leslie Cargile, M.D., who then referred her to Dr. Eric Rhoton, a neurosurgeon.
3. Dr. Rhoton assumed plaintiff's care and on January 11, 2001, he performed a cervical diskectomy and fusion at C4-5, C5-6, and C6-7. Dr. Rhoton released plaintiff to return to sedentary work on May 30, 2001. On September 25, 2001 Dr. Rhoton released her to work with no lifting over five pounds and no standing over one hour. At that time he was of the opinion that plaintiff had reached maximum medical improvement, and he discharged her. Thereafter, Dr. Rhoton assigned a permanent disability rating of 10% to her back.
4. Through her employment, plaintiff chose to enroll in a short-term disability plan option that cost her $0.43 of each $100 gross wage earnings. This short-term disability Option #1 paid 60% of her gross pay if she became disabled. Plaintiff paid the required portion of the premium for this coverage and the employer also paid a portion of the premium. Defendant testified that plaintiff would have no short-term disability coverage if she had not paid her requested share of the premium.
5. Plaintiff received short-term disability benefits of $257.00 per week beginning on January 24, 2001 for twenty-three (23) weeks. Total short-term disability benefits received by plaintiff were $6,075.53.
6. On March 23, 2001, defendant denied plaintiff's workers' compensation claim for her December 15, 2000 injury.
7. Plaintiff returned to work on July 9, 2001 at the same rate of pay she earned at the time of her December 15, 2000 accident. Plaintiff has continued to work for defendant-employer since her recovery.
8. The parties participated in a mediated settlement conference on April 24, 2002. They entered into a mediation settlement agreement, which was signed by both parties, including counsel for both parties and fully executed. Pursuant to the terms of the mediation agreement:
A. Defendant agreed to accept liability for the claim;
B. Defendant agreed to pay accrued temporary total disability benefits due to plaintiff in a lump sum of $6,677.04;
C. Defendant agreed to pay a lump sum for 10 percent permanent partial impairment of the back in the amount of $8,346.30;
D. Defendant agreed to pay the mediator's fee;
E. Both parties agreed to resolve issues relating to short-term disability benefits pursuant to the short-term disability policy.
9. The issues agreed upon from the mediated settlement agreement under the jurisdiction of the Industrial Commission were submitted on a fully executed Form 21 agreement for the Commission to review. The Form 21 agreement was approved on July 11, 2002.
10. The parties contracted in the fully executed mediated settlement agreement to resolve short-term disability benefit issues according to the provisions in the short-term disability policy. The agreement regarding short-term disability benefits paid to plaintiff included in the mediated settlement agreement was correctly not included on the Form 21 agreement because it is not subject to the Industrial Commission jurisdiction.
11. Plaintiff filed a Form 33 Request for Hearing seeking determination of defendants' right to a credit. However, defendants are not seeking a credit against compensation benefits owed plaintiff for short-term disability benefits paid. Defendants already have paid all temporary total disability benefits and permanent partial disability benefits to which plaintiff is entitled. Therefore, the only issue before the Full Commission is whether the mediated settlement agreement was a valid and enforceable agreement that was properly executed.
12. The mediated settlement agreement was a valid and enforceable fully executed agreement. Plaintiff has been paid all workers' compensation benefits due to her pursuant to the mediated settlement agreement and the resultant Form 21 agreement. The Industrial Commission does not have jurisdiction over the issues raised regarding plaintiff's repayment to defendant-employer of the short-term disability payments.
13. This workers' compensation action involved substantial questions of both fact and law, and the prosecution of the action was not stubborn, unfounded or litigious.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. A mediated settlement agreement is governed by general principles of contract law. Chappel v. Roth, 353 N.C. 690,692, 548 S.E.2d 499, 500,rehearing denied, 354 N.C. 75, 553 S.E.2d 36 (2001).
2. A fully executed mediated settlement agreement is an enforceable contract and parties are required to abide by its terms. The Industrial Commission's approval of a Form 21 agreement or a compromise settlement agreement, had there been one filed in this matter, is limited to the matters over which the Industrial Commission has jurisdiction. Thus the Industrial Commission has no jurisdiction over the issue raised concerning plaintiff's repayment to defendant-employer of short-term disability payments made by defendant to plaintiff. Chappell v. Roth,353 N.C. 690, 548 S.E.2d 499 (2001); Lemly v. Colvard Oil Co.,157 N.C. App. 99 (2003), 577 S.E.2d 712, Lee v. Wake County,165 N.C. App. 154, 598 S.E.2d 427(2004).
3. The prosecution of this claim was reasonable and not based on stubborn unfounded litigiousness, and therefore defendants are not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. The Industrial Commission has no subject matter jurisdiction regarding plaintiff's obligation to repay defendant-employer the benefits received for short-term disability; therefore, this matter is dismissed with prejudice.
2. Each side shall bear its own costs.
This the 7th day of July 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER