DIANE FINGER, Plaintiff v. GASTON COUNTY, Defendant

No. COA05-871

(Filed 5 July 2006)

**Cities and Towns; Police Officers— discontinuance of special allowance for retirement from county's police force— absence of preaudit certificate**

The trial court did not err in a breach of contract case by granting summary judgment in favor of defendant county in an action for breach of contract for its failure to continue paying plaintiff a special allowance based on her retirement from the county's police force, because: (1) an agreement with a county requiring the payment of money is not enforceable in the absence of the preaudit certificate mandated by N.C.G.S. § 159-28(a); (2) the agreement in this case that is the subject of this appeal is for the payment of money, and thus, *Lee v. Wake County*, 165 N.C. App. 154 (2004), is inapplicable; and (3) the pertinent memorandum is not enforceable under principles of estoppel since to permit a party to use estoppel to render a county contractually bound despite the absence of the certificate would effectively negate N.C.G.S. § 159-28(a).

Appeal by plaintiff from order entered 3 January 2005 by Judge Jesse B. Caldwell III in Gaston County Superior Court. Heard in the Court of Appeals 9 February 2006.

*Thomas B. Kakassy, P.A., by Thomas B. Kakassy, for plaintiff-appellant.*

*Stott, Hollowell, Palmer & Windham, LLP, by Martha Raymond Thompson, for defendant-appellee.*

GEER, Judge.

Plaintiff Diane Finger appeals from the trial court's grant of summary judgment in favor of defendant Gaston County. Finger sued the County after it stopped paying her a special allowance based on her retirement from the County's police force. This Court's decision in *Data Gen. Corp. v. County of Durham*, 143 N.C. App. 97, 545 S.E.2d 243 (2001), holding that an agreement with a county is not enforceable in the absence of the preaudit certificate mandated by N.C. Gen. Stat. § 159-28(a) (2005), requires that we uphold the order granting summary judgment.

## Facts

The facts in this case are not in dispute. Finger was employed by Gaston County as a police officer until March 1999, when she retired on medical disability. Two and a half years later, in October 2001, Charles Vinson, the Gaston County Human Resources Director, informed Finger that she was entitled to receive a supplemental retirement benefit, called a "Law Enforcement Special Allowance," because her retirement was the result of medical disability. In November 2001, Chuck Moore, the Gaston County Attorney, told Finger that the County owed her arrearages because of the County's failure to pay her the special allowance.

On 7 February 2003, Finger and Vinson signed a "Memorandum of Understanding Between: Diane P. Finger and the County of Gaston Regarding Law Enforcement Special Separation Allowance" ("the Memorandum"). The Memorandum provided that: (1) Finger was entitled to receive $687.11 per month from the date of her retirement until she reached the age of 62; (2) the County had thus far incorrectly denied this benefit to Finger; (3) Finger was entitled to 46 months of arrearages totaling $31,607.25; (4) Finger would receive half of the arrearages in a lump sum of $15,803.62 and the remainder in 23 monthly installments of $687.11 each; (5) in addition to the monthly arrearage installments, Finger would also begin receiving her regular monthly allowance of $687.11 per month, bringing her monthly payments to $1,374.23; and (6) after the 23 months were finished, Finger would continue to receive $687.11 per month until the first month after she turned 62 years old.

On 26 June 2003, however, the Gaston County Board of Commissioners determined that they had misapplied N.C. Gen. Stat. § 143.166.41(a) (2005) when they had previously concluded that

Finger and other county employees were entitled to a special allowance. The Board, therefore, adopted Resolution 2003-245, which ended the supplemental benefit payment that Finger and others had been receiving.

Once the County ceased paying Finger, Finger brought suit for breach of contract, seeking $100,989.00 in damages, as well as attorneys' fees. Gaston County's motion to dismiss under Rule 12(b)(6) was denied, but subsequently its motion for summary judgment was allowed. Finger filed a timely notice of appeal to this Court.

Discussion

Finger first argues that summary judgment was inappropriate because issues of fact exist as to whether the Memorandum is an enforceable contract. This Court has previously held that "N.C. Gen. Stat. § 159-28(a) sets forth the requirements and obligations that must be met before a county may incur contractual obligations." *Cincinnati Thermal Spray, Inc. v. Pender County*, 101 N.C. App. 405, 407, 399 S.E.2d 758, 759 (1991). That statute provides in pertinent part:

> If an obligation is evidenced by a contract or agreement requiring the payment of money or by a purchase order for supplies and materials, the contract, agreement, or purchase order shall include on its face a certificate stating that the instrument has been preaudited to assure compliance with this subsection. . . . An obligation incurred in violation of this subsection is invalid and may not be enforced.

N.C. Gen. Stat. § 159-28(a). It is undisputed that the Memorandum did not include the preaudit certificate required by § 159-28(a).

In *Data General*, this Court acknowledged that whenever a county enters into a *valid* contract, it waives sovereign immunity and may be sued for damages in the event of a breach of that contract. 143 N.C. App. at 102, 545 S.E.2d at 247. On the other hand, "in the absence of a valid contract, a state entity [including a county] may not be subjected to contractual liability." *Id.* The Court then held:

> Where a plaintiff fails to show that the requirements of N.C. Gen. Stat. § 159-28(a) have been met, there is no valid contract, and any claim by plaintiff based upon such contract must fail.
>
> In the instant case, [plaintiff] Data General has failed to make a showing that the required preaudit certificate exists, and none

is evidenced in the record. Furthermore, Durham County has argued that no such certificate exists. As there is insufficient evidence in the record that the requirements of N.C. Gen. Stat. § 159-28(a) have been met, we conclude that no valid contract was formed between Data General and Durham County, and Durham County therefore has not waived its sovereign immunity to be sued (and Data General may not maintain a suit) for contract damages.

*Id.* at 103, 545 S.E.2d at 247-48 (internal citation omitted). The Court, therefore, affirmed dismissal of the plaintiff's breach of contract claim. *Id.*

We have been unable to identify any basis for distinguishing *Data General* from this case. Because the Memorandum had no preaudit certificate, "there is no valid contract, and any claim by plaintiff based upon such contract must fail." *Id.*, 545 S.E.2d at 247. *See also Cabarrus County v. Systel Bus. Equip. Co.*, 171 N.C. App. 423, 425, 614 S.E.2d 596, 597 ("Cabarrus County argues that the trial court erred in concluding that a settlement agreement between itself and [plaintiff] was valid and binding despite the absence of a completed preaudit certificate. We agree."), *disc. review denied*, 360 N.C. 61, 621 S.E.2d 177 (2005).

Finger relies upon *Lee v. Wake County*, 165 N.C. App. 154, 598 S.E.2d 427, *disc. review denied*, 359 N.C. 190, 607 S.E.2d 275 (2004), in arguing that the lack of a signed preaudit certificate does not necessarily render the Memorandum unenforceable. *Lee*, however, involved a memorandum agreement signed in a workers' compensation mediation in which the parties agreed "to prepare a formalized settlement compromise agreement for the [Industrial] Commission's consideration." *Id.* at 162, 598 S.E.2d at 433. The *Lee* Court held that this preliminary agreement did not require a preaudit certificate "to enable the Commission to direct the submission of a formalized compromise settlement agreement." *Id.* at 163, 598 S.E.2d at 433.

As this Court recognized in *Systel*, in rejecting the same argument made by Finger regarding *Lee*, "the action on appeal [in *Lee*] was 'for specific performance, not for the payment of money.' " *Systel*, 171 N.C. App. at 426, 614 S.E.2d at 598 (quoting *Lee*, 165 N.C. App. at 162, 598 S.E.2d at 433). In the present case, as in *Systel*, the agreement that is the subject of this appeal is for the payment of money, and *Lee* is therefore inapplicable. *See* N.C. Gen. Stat. § 159-28(a) (requiring a

FINGER v. GASTON CTY.

[178 N.C. App. 367 (2006)]

preaudit certificate with respect to an "agreement requiring the payment of money").

Finger next argues that, even if the Memorandum is not legally enforceable, a genuine issue of fact exists as to whether it is enforceable under principles of estoppel. In *Data General*, this Court rejected an identical argument:

> We have concluded, *supra*, that the lease agreement entered between the parties was not a valid contract sufficient to bind Durham County as it failed to comply with the statutory requirements in N.C. Gen. Stat. § 159-28(a). Data General may not recover under an equitable theory such as estoppel for breach of contract where Durham County has not expressly entered a valid contract. Furthermore, parties dealing with governmental organizations are charged with notice of all limitations upon the organizations' authority, as the scope of such authority is a matter of public record. Likewise, the preaudit certificate requirement is a matter of public record, N.C. Gen. Stat. § 159-28(a), and parties contracting with a county within this state are presumed to be aware of, and may not rely upon estoppel to circumvent, such requirements.

143 N.C. App. at 104, 545 S.E.2d at 248 (internal citations omitted).

Our General Assembly has in N.C. Gen. Stat. § 159-28(a) made a policy determination to forbid counties from entering into contracts for payment of money that lack a preaudit certificate. To permit a party to use estoppel to render a county contractually bound despite the absence of the certificate would effectively negate N.C. Gen. Stat. § 159-28(a). We are not free to allow a party to obtain a result indirectly that the General Assembly has expressly forbidden. The trial court, therefore, also properly granted summary judgment with respect to Finger's claims based on estoppel.

Affirmed.

Judges HUDSON and TYSON concur.