SADIE HOWARD, Plaintiff
v.
COUNTY OF DURHAM, Defendant

No. COA12-1484

Filed 7 May 2013

1. **Contracts—breach of contract—failure to plead valid contract—pre-audit statement required**

   The trial court did not err by granting defendant's motion to dismiss a claim breach of contract. Plaintiff failed to plead a valid

contract based upon the absence of a pre-audit statement mandated by N.C.G.S. § 159-28(a).

**2. Fraud—negligent misrepresentation—motion to dismiss—failure to allege pecuniary loss**

The trial court did not err by granting defendant's motion to dismiss a claim of negligent misrepresentation. Plaintiff failed to allege any pecuniary loss.

Appeal by plaintiff from Order entered 17 October 2012 by Judge Orlando F. Hudson, Jr. in Superior Court, Durham County. Heard in the Court of Appeals 28 March 2013.

*Hairston Lane Brannon, PA by Jeremy R. Leonard and James E. Hairston, Jr., for plaintiff-appellant.*

*Durham County Attorney's Office by Assistant County Attorney Kathy R. Everett-Perry, for defendant-appellee.*

STROUD, Judge.

Sadie Howard ("plaintiff") appeals from the order entered 17 October 2012 dismissing both of her claims against Durham County ("defendant"). She argues on appeal that the trial court erred in granting defendant's motion to dismiss because it had jurisdiction over defendant and she properly pled each claim. For the following reasons, we affirm.

## I. Background

On 26 July 2012, plaintiff filed a complaint against defendant in Superior Court, Durham County, for breach of contract and negligent misrepresentation. Plaintiff's complaint alleged that in April 2010, she had filed a complaint in Superior Court, Wake County, for violation of her civil rights under 42 U.S.C. § 1983 and wrongful termination. Defendant removed the action to the United States District Court for the Eastern District of North Carolina. The parties participated in a mediated settlement conference on 2 May 2011. Defendant was represented at the settlement conference by Kim Simpson, the Durham County Tax Administrator, and Kathy Everett-Perry, an Assistant Durham County Attorney.[1]

---

1. The record before this court does not include any pleadings or other information from the federal lawsuit. The facts noted in this opinion are based solely upon the allegations of plaintiff's complaint.

The parties exchanged settlement offers and, according to plaintiff's complaint, they reached an oral agreement to settle for $50,000. The mediator prepared a "Memorandum of Settlement" reflecting the terms of the settlement. Plaintiff signed the memorandum, but Ms. Simpson refused to sign for defendant as she said she did not have authority to settle for that amount. On 4 May 2011, Ms. Simpson informed the mediator that she had decided not to recommend the settlement offer to the Durham County Board of Commissioners.

Instead of filing an answer, defendant moved to dismiss plaintiff's complaint on 11 September 2012 under N.C. Gen. Stat. § 1A-1, Rule 12(b) (1), (2), and (6), alleging that the trial court lacked subject matter and personal jurisdiction due to sovereign immunity and that plaintiff's complaint failed to state a claim. Along with its motion to dismiss, defendant filed an affidavit from Catherine Whisenhunt, the Risk Manager for Durham County, stating that the county has not purchased any insurance policies that would cover plaintiff's claims. The Superior Court granted defendant's motion by order entered 17 October 2012 both on jurisdictional grounds and on the grounds that plaintiff failed to state a cause of action. Plaintiff filed written notice of appeal to this Court on 25 October 2012.

## II. Motion to Dismiss

Defendant moved to dismiss plaintiff's action both on the grounds of sovereign immunity under N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and (2) and failure to state a claim under Rule 12(b)(6). The Superior Court granted defendant's motion to dismiss on both grounds. For the following reasons, we affirm the trial court's order.

A. Standard of Review

> With respect to a motion to dismiss based on sovereign immunity, the question is whether the complaint specifically alleges a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action. . . . [Further,] precise language alleging that the State has waived the defense of sovereign immunity is not necessary, but, rather, the complaint need only contain sufficient allegations to provide a reasonable forecast of waiver.

*Sanders v. State Personnel Com'n*, 183 N.C. App. 15, 19, 644 S.E.2d 10, 13 (citations, quotation marks, and brackets omitted), *disc. rev. denied*, 361 N.C. 696, 652 S.E.2d 653, and *app. dismissed*, 361 N.C. 696, 652 S.E.2d 654 (2007).

On a motion to dismiss pursuant to Rule 12(b)(6) of the
North Carolina Rules of Civil Procedure, the standard of
review is whether, as a matter of law, the allegations of the
complaint, treated as true, are sufficient to state a claim
upon which relief may be granted under some legal theory.
The complaint must be liberally construed, and the court
should not dismiss the complaint unless it appears beyond
a doubt that the plaintiff could not prove any set of facts to
support his claim which would entitle him to relief.

*Block v. County of Person*, 141 N.C. App. 273, 277–78, 540 S.E.2d 415, 419
(2000) (citations and quotation marks omitted).

## B.   Breach of Contract

**[1]**  We first address plaintiff's breach of contract claim. Plaintiff argues
that the trial court erred in dismissing her claim for lack of jurisdiction
and failure to state a claim because she alleged a valid contract between
her and defendant. Defendant counters that it is protected by sover-
eign immunity because there was evidence before the trial court that
it had not waived immunity through the purchase of "insurance which
would provide coverage for the Causes of Action stated in plaintiff's
complaint." Defendant further asserts that that "there was never a meet-
ing of the minds between the parties and, thus, no agreement" and that
plaintiff failed to properly plead a valid contract based upon the lack of
a pre-audit statement required by N.C. Gen. Stat. § 159-28(a).

First, we note that defendant is not protected by sovereign immu-
nity as to a claim for breach of contract, if there was a valid contract
between it and plaintiff.

[W]henever the State of North Carolina, through its autho-
rized officers and agencies, enters into a valid contract,
the State implicitly consents to be sued for damages on
the contract in the event it breaches the contract. Thus,
in this case, and in causes of action on contract . . . the
doctrine of sovereign immunity will not be a defense to
the State. The State will occupy the same position as any
other litigant.

*Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976) (citation
omitted). This rule applies to contracts entered into by the counties of
this state. *Archer v. Rockingham County*, 144 N.C. App. 550, 558, 548
S.E.2d 788, 793 (2001), *disc. rev. denied*, 355 N.C. 210, 559 S.E.2d 796
(2002). Although plaintiff's underlying claims in federal court were for

"willful violation of civil rights pursuant to 42 U.S.C. § 1983" and wrongful termination, the claim which is the subject of this action arises only from the failure to settle that claim in federal court and does not involve the merits of plaintiff's federal claim.

Thus, if plaintiff properly pled a valid contract between her and defendant, defendant would not be protected by sovereign immunity as to a claim for breach of the contract. *See Archer*, 144 N.C. App. at 558, 548 S.E.2d at 793. If, however, plaintiff did not properly plead a valid contract, her action would be subject to dismissal for failure to state a claim for breach of contract. *Id.; see McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 579-80 (2005), *disc. rev. denied*, 360 N.C. 290, 627 S.E.2d 621 (2006). So we must first consider whether plaintiff has pled a valid contract.

Lest this case create bad law which we believe would be quite detrimental to mediation and apparently contrary to our state law and public policy regarding mediation, we note that this case presents a unique situation. This case falls into an unusual gap between the statutes and rules governing mediation in the state court and the federal court. Had the mediated settlement conference taken place in our state's superior court, there would clearly be no enforceable agreement because mediated settlement agreements must be in writing under N.C. Gen. Stat. § 7A-38.1(l)(2011). The mediation rules governing mediation in the Eastern District of North Carolina also provide that mediated settlement agreements "shall" be in writing, E.D.N.C. Local Rule 101.1d(d)(3), but we can find no Fourth Circuit cases which hold that this rule precludes enforcement of an oral agreement reached at mediation, and we will not presume to interpret the federal rules, particularly as defendant has not raised this argument. *See* N.C.R. App. P. Rule 28(a); *Ashley Furniture Industries, Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 378 (4th Cir. 1999) (noting that the local rules in the Middle District of North Carolina require mediated settlement agreements to be reduced to writing, but declining to address whether that requirement makes an oral settlement agreement unenforceable, reasoning that "[t]he district court is certainly in a better position than we to interpret its rules.").

Taking the allegations of the complaint as true, as we must, plaintiff has alleged an oral contract and defendant has raised no defense that this particular agreement must be in writing to be enforceable. Thus, this case is governed by neither the state nor federal statutes regarding mediation. By its plain language, N.C. Gen. Stat. § 7A-38.1 only applies to superior court civil actions and does not purport to govern mediated settlement conferences in the federal courts within North

Carolina. Therefore, we must apply the general common law of contract formation.

Defendant also fails to raise any argument regarding Ms. Simpson's authority, or lack thereof, to settle plaintiff's claim on defendant's behalf without approval by the county commissioners. Under N.C. Gen. Stat. § 153A-12, a county may act only upon approval by the county commissioners. "[P]owers [vested in a county] can only be exercised by the board of commissioners, or in pursuance of a resolution adopted by the board." *Jefferson Standard Life Ins. Co. v. Guilford County*, 225 N.C. 293, 301, 34 S.E.2d 430, 435 (1945). Plaintiff has not alleged any particular action by defendant's county commissioners assenting to the proposed settlement or even authorizing defendant's counsel to settle the case for any particular amount, but she has alleged that defendant's counsel had authority, or at least apparent authority, to settle. Defendant has not challenged plaintiff's failure to allege that the County took any action to approve the $50,000 settlement alleged by plaintiff, so we will not address this issue. We note the absence of any argument regarding authority only to caution against use of this opinion to support any future argument regarding how a county may or may not authorize a settlement.

Now we will address the sole argument which defendant did raise, which is based upon plaintiff's failure to plead a valid contract based upon the absence of a pre-audit statement mandated by N.C. Gen. Stat. § 159-28(a)(2011). This argument is based upon the assumptions that the parties did enter into an agreement to settle for $50,000 and that Ms. Simpson either had authority to enter this agreement or that she had apparent authority to do so. Thus, defendant seeks to avoid its obligation to plaintiff based only upon the absence of a pre-audit statement.

> N.C. Gen.Stat. § 159–28(a) sets forth the requirements and obligations that must be met before a county may incur contractual obligations. . . . *Where a plaintiff fails to show that the requirements of N.C. Gen. Stat. § 159–28(a) have been met, there is no valid contract, and any claim by plaintiff based upon such contract must fail.*

*Data General Corp.*, 143 N.C. App. 97, 102-03, 545 S.E.2d at 243, 247 (2001) (citations and quotation marks omitted) (emphasis added). N.C. Stat. § 159-28(a) states:

> If an obligation is evidenced by a contract or agreement requiring the payment of money or by a purchase order for supplies and materials, the contract, agreement, or purchase order shall include on its face a certificate stating

that the instrument has been preaudited to assure compliance with this subsection. The certificate, which shall be signed by the finance officer or any deputy finance officer approved for this purpose by the governing board, shall take substantially the following form:

This instrument has been preaudited in the manner required by the Local Government Budget and Fiscal Control Act.

---

(Signature of finance officer).

A settlement agreement requiring a county to pay money is subject to the requirements of N.C. Gen. Stat. § 159-28(a). *Cabarrus County v. Systel Business Equipment Co., Inc.*, 171 N.C. App. 423, 427, 614 S.E.2d 596, 599, *disc. rev. denied*, 360 N.C. 61, 621 S.E.2d 177 (2005).[2]

Plaintiff argues that under *Lee v. Wake County*, a preaudit certificate is not required. In *Lee*, the plaintiff brought a workers' compensation claim and the parties entered into a written settlement agreement at a mediated settlement conference held under the rules of the Industrial Commission. *Lee v. Wake County*, 165 N.C. App. 154, 155-57, 598 S.E.2d 427, 429-30, *disc. rev. denied*, 359 N.C. 190, 607 S.E.2d 275 (2004). In *Lee*,

[t]he memorandum of agreement provided in pertinent part that defendants would pay plaintiff a lump sum of $750,000 and would pay certain medical and disability benefits, and that defendants would prepare a formal clincher agreement incorporating the terms of the settlement agreement and releasing defendants from all workers' compensation liability. The memorandum of agreement contained no contingencies or provisional terms such as the approval of its terms by the Wake County Board of County Commissioners. Thereafter, defendants withdrew their consent to the memorandum of agreement and refused to prepare a formal settlement agreement for presentation to the Commission for approval.

*Id.* at 156, 598 S.E.2d at 429.

---

2. N.C. Gen. Stat. § 159-28(a) was amended in 2012 to add a provision whereby an obligation under this subsection does not need a preaudit certificate if it has been approved by the Local Government Commission. This amendment became effective 12 July 2012. 2012 N.C. Sess. Laws 156.

In seeking to avoid their obligation under the agreement, the defendant in *Lee* argued that "the entire agreement was invalid because their representative at the settlement conference had not been given authority to negotiate a settlement agreement for more than $100,000." *Id.* Before the Industrial Commission and on appeal to this Court, the defendants also claimed that "the absence of a preaudit certificate pursuant to G.S. § 159–28 defeats the Commission's authority to direct defendants to prepare a formal Compromise Settlement Agreement for approval." *Id.* at 161, 598 S.E.2d at 432. In the context of the Industrial Commission mediation, this Court rejected that argument and held that "given the current posture of this matter, the Commission could properly enforce the memorandum of agreement and order defendants to do so." *Id.* But this holding was based specifically upon the Industrial Commission mediation process:

> The development of a formalized workers' compensation compromise settlement agreement takes place within the structure imposed by the Industrial Commission Rules and the Industrial Commission Rules for Mediated Settlement Conferences. These rules provide for a three-stage process. First, the parties attend a mediated settlement conference. "If an agreement is reached in the mediation conference, the parties shall reduce the agreement to writing, specifying all the terms of their agreement bearing on the resolution of the dispute before the Industrial Commission, and sign it along with their counsel." RMSC Rule 4(d). Secondly, "agreements for payment of compensation shall be submitted in proper form for Industrial Commission approval, and shall be filed with the Commission within 20 days of the conclusion of the mediation conference." RMSC Rule 4(d). To be "in proper form," a compromise settlement agreement must be accompanied by, *e.g.*, copies of all pertinent medical and vocational rehabilitation records, a signed release of liability, and documents pertinent to the claimant's future earning capacity. Finally, upon submission to the Commission, "[o]nly those agreements deemed fair and just and in the best interest of all parties will be approved." Industrial Commission Rule 502(1). In this sequence of events the pre-audit certificate will naturally be executed, if at all, after the settlement conference, when the amount of the county's liability is known, and as part of the general formalizing of the documents for submission to the Industrial Commission.

We conclude that an otherwise valid memorandum of agreement is not rendered void by the fact it does not bear the requisite pre-audit certificate. In this case, the subject memorandum of agreement is an agreement to prepare a formalized settlement compromise agreement for the Commission's consideration. The current appeal therefore involves an action for specific performance, not for the payment of money. We conclude that G.S. § 159–28 does not require that a memorandum of agreement be accompanied by a county finance manager's pre-audit certificate to enable the Commission to direct the submission of a formalized compromise settlement agreement.

*Id.* at 162-63, 598 S.E.2d at 432-33.

Thus, *Lee* is distinguishable from this case for several reasons. First, in *Lee* there was "an otherwise valid memorandum of agreement" which was actually executed by a representative of the defendants. *Id.* at 156, 162, 598 S.E.2d at 429, 433. In addition, the agreement in *Lee* was reached in the context of a "three-stage process" before the Industrial Commission in which "the pre-audit certificate will naturally be executed, if at all, after the settlement conference, when the amount of the county's liability is known, and as part of the general formalizing of the documents for submission to the Industrial Commission." *Id.* at 162, 598 S.E.2d at 432-33. No such process applies to the case before us. Actually, as noted above, although this agreement arose in mediation, the rules which would normally govern mediated settlement agreements in our courts do not apply.

Plaintiff's only theory of a contract is one formed by oral agreement of the parties, as defendant never signed the written agreement. Indeed, plaintiff specifically alleged that the agreement was a "verbal agreement," and that defendant's representative specifically stated that "she had no authority to settle the claim for the sum she had offered to Plaintiff."

An oral contract, by its very nature, cannot contain the written certification required by N.C. Gen. Stat. § 159-28(a). *See Cincinnati Thermal Spray, Inc. v. Pender County*, 101 N.C. App. 405, 407-08, 399 S.E.2d 758, 759 (1991) (affirming dismissal of a contract action for failure to conform to N.C. Gen. Stat. § 159-28(a) where the plaintiff alleged an oral contract between it and the defendant county). Thus, plaintiff has failed to allege that the settlement agreement met the requirements of N.C.

Gen. Stat. § 159-28(a). "An obligation incurred in violation of this subsection is invalid and may not be enforced." N.C. Gen. Stat. § 159-28(a).

Because plaintiff has failed to allege a contract conforming to the dictates of § 159-28(a), she has failed to allege a valid contract and cannot state a claim for breach of contract. *See Systel*, 171 N.C. App. at 427, 614 S.E.2d at 599; *McLamb*, 173 N.C. App. at 588, 619 S.E.2d at 580. Accordingly, we affirm the trial court's order dismissing this claim.

## C. Negligent Misrepresentation

**[2]** Plaintiff next argues that the trial court erred in dismissing her claim for negligent misrepresentation. Defendant argues that this claim is precluded by sovereign immunity and that plaintiff failed to state a claim. Because we conclude that plaintiff has failed to state a claim, we do not address the immunity issues raised by the parties.

Plaintiff alleged that she "justifiably relied, to her detriment, on information prepared by defendant without reasonable care." She alleged that she suffered pecuniary loss "from the defendant's action of supplying false information during the course of a mediated settlement conference." The "false information" as alleged was defendant's counsel's initial representation that she had authority to settle the case, while she later in the mediation informed plaintiff that she did not have authority to settle for $50,000.

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988) (citations omitted). "In this State, we have adopted the Restatement 2d definition of negligent misrepresentation and have held that the action lies where *pecuniary loss* results from the supplying of false information to others for the purpose of guiding them in their business transactions." *Driver v. Burlington Aviation, Inc.*, 110 N.C. App. 519, 525, 430 S.E.2d 476, 480 (1993) (citations omitted). A claim for negligent misrepresentation must allege pecuniary loss. In other words, the complaint must allege that the plaintiff's reliance was actually detrimental. *See Raritan River Steel Co.*, 322 N.C. at 206, 367 S.E.2d at 612.

Here, plaintiff's complaint fails to allege any pecuniary loss. Plaintiff alleged that Ms. Simpson misrepresented her authority to settle the case for Durham County and that she signed the Memorandum of Settlement in reliance on Ms. Simpson's misrepresentation. She does not allege that her position in the federal litigation was prejudiced by the lack of a

settlement.[3] Plaintiff has not alleged that the Memorandum of Settlement was used against her in any way. This case is not one where the plaintiff had already taken some action, such as taking a dismissal or executing a release, that would preclude her recovery in the underlying federal action in reliance on defendant's representations.

The only loss plaintiff claims is the loss associated with not having settled the case. Specifically, plaintiff asserts that "she suffered pecuniary loss as a result of [defendant] supplying false information, which induced her into making an acceptance of the offer." As explained above, even taking all allegations in the complaint as true, no valid settlement agreement was formed due to the lack of a pre-audit certificate. Plaintiff cites no case recognizing a failure to settle a case as a compensable "pecuniary loss" and we decline to extend the definition of negligent misrepresentation to cover such a situation.

It is well recognized that not all mediated settlement conferences will result in a settlement agreement. *See* N.C. Gen. Stat. § 7A-38.1(f) ("Nothing in this section shall require any party or other participant in the conference to make a settlement offer or demand which it deems is contrary to its best interests."); E.D.N.C. Local Rule 101.1d(f)(10) ("It is the duty of the mediator to determine if an impasse has been reached or mediation should for any reason be terminated. The mediator shall then inform the parties that mediation is terminated."). Even if plaintiff believed for a few hours, or at the most two days, that they had reached a settlement, when in fact no settlement had been reached, this is simply not a pecuniary loss, even if her belief was reasonable based on the representations of the other party. Plaintiff has not alleged any other facts that could constitute pecuniary loss.

"In ruling on a Rule 12(b)(6) motion to dismiss, the trial court regards all factual allegations of the complaint as true. Legal conclusions, however, are not entitled to a presumption of truth." *Miller v. Rose*, 138 N.C. App. 582, 592, 532 S.E.2d 228, 235 (2000) (citations omitted). Thus, although plaintiff has alleged each element of negligent misrepresentation, including pecuniary loss, we hold that "the complaint on its face reveals the absence of facts sufficient to make a good claim." *Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 429 (citation and

---

3. Although plaintiff's brief discusses some aspects of the federal case, the record before us includes absolutely nothing from the federal action other than the allegations of plaintiff's complaint as noted above. "Matters discussed in the brief but outside the record will not be considered." *Hudson v. Game World, Inc.*, 126 N.C. App. 139, 142, 484 S.E.2d 435, 437-38 (1997) (citation omitted).

quotation marks omitted), *app. dismissed,* 361 N.C. 425, 647 S.E.2d 98, *disc. rev. denied,* 361 N.C. 690, 652 S.E.2d 257 (2007). Therefore, we affirm the trial court's order dismissing plaintiff's negligent misrepresentation claim. Because we affirm the trial court's order on 12(b)(6) grounds, we need not reach the immunity issues presented as to this claim.[4]

### III. Conclusion

Plaintiff failed to allege a valid contract between her and defendant as the complaint itself demonstrates that there was no pre-audit certificate. Plaintiff's claim of negligent misrepresentation was properly dismissed because plaintiff failed to allege any pecuniary loss. Therefore, we affirm the trial court's order granting defendant's motion to dismiss.

AFFIRMED.

Judges ELMORE and STEELMAN concur.

---

4. Defendant also argued that it was immune from suit because when a governmental entity engages in settlement mediation it is undertaking a governmental function in that it is "protecting the coffers of the citizens of Durham County." Although we do not reach this issue, we are highly skeptical that settlement negotiations could qualify as a governmental function when any person, group of people, or corporate entity could, and do, in fact, engage in that activity. *See Town of Sandy Creek v. East Coast Contracting, Inc.,* ___ N.C. App. ___, ___, 736 S.E.2d 793, 796-97 ("Generally speaking, the distinction [between governmental and proprietary functions] is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and 'private' when any corporation, individual, or group of individuals could do the same thing." (citation, quotation marks, and brackets omitted)). Every party, whether an individual, company, or municipality, that engages in settlement negotiations aims to reach an agreement that best protects their coffers or wallets. Such an objective, though it may well be appreciated by the citizens of Durham County, is hardly a uniquely governmental one. Taken to its logical extreme, defendant's argument is that all governmental entities are immune from any enforcement of any mediated settlement agreement simply because the governmental entity was a party to the mediation.