IN THE SUPREME COURT OF NORTH CAROLINA

No. 557PA13

Filed 29 January 2016

TYKI SAKWAN IRVING

v.

CHARLOTTE-MECKLENBURG BOARD OF EDUCATION

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 750 S.E.2d 1 (2013), reversing an order filed on 8 August 2012 by the North Carolina Industrial Commission and remanding for further proceedings. Heard in the Supreme Court on 16 February 2015.

*Osborne Law Firm, P.C., by Curtis C. Osborne, for plaintiff-appellee.*

*Roy Cooper, Attorney General, by Olga E. Vysotskaya de Brito and Amar Majmundar, Special Deputy Attorneys General, for defendant-appellant.*

*Law Office of Kevin J. Williams, PLLC, by Kevin J. Williams; and Perry Perry & Perry, P.A., by Maria Singleton, for North Carolina Advocates for Justice, amicus curiae.*

JACKSON, Justice.

In this case, we consider whether plaintiff Tyki Sakwan Irving may bring an action pursuant to the Tort Claims Act before the North Carolina Industrial Commission (the Commission) to recover for alleged negligence by an employee of a local board of education in the operation of an activity bus transporting students and school staff to an extracurricular event. Because the waiver of governmental

immunity provided in the relevant section of the Tort Claims Act does not apply to the set of facts before us, we conclude that the Commission does not have jurisdiction over plaintiff's action.

In October 2007, plaintiff's car was struck by a school activity bus transporting student athletes and staff to a football game in Mecklenburg County. The bus was driven by Randall Long, an employee of defendant Charlotte-Mecklenburg Board of Education. Plaintiff contends that as a result of Long's negligence, she received serious personal injuries, for which she now seeks compensation.

Plaintiff initiated this action on 29 September 2010 by filing a claim against defendant with the Commission pursuant to the Tort Claims Act—specifically, section 143-300.1. This statute establishes a limited waiver of local governmental immunity by authorizing lawsuits against county and city boards of education for the negligent operation of "school buses" and "school transportation service vehicles" when certain criteria are met, and the statute confers jurisdiction upon the Commission to hear these claims. N.C.G.S. § 143-300.1 (2013).

On 8 August 2012, the Commission granted defendant's motion for summary judgment on the grounds that the Commission lacked subject matter jurisdiction over plaintiff's claim because the claim did not fall within the parameters of section 143-300.1.

Plaintiff appealed, and the Court of Appeals unanimously reversed the Commission and remanded the matter for further proceedings. *Irving v. Charlotte-Mecklenburg Bd. Of Educ.*, ___ N.C. App. ___, ___, 750 S.E.2d 1,9 (2013). Defendant filed a petition for discretionary review, which this Court allowed on 19 August 2014.

In its appeal defendant argues that section 143-300.1 does not confer jurisdiction over plaintiff's action to the Commission because this section applies only to accidents involving "public school bus[es] or school transportation service vehicle[s]," occurrences that do not include accidents involving school activity buses. In response, plaintiff contends that school activity buses fall within the ambit of a "public school bus or school transportation service vehicle." We conclude that public school buses, school transportation service vehicles, and school activity buses are distinct categories of vehicles, and that school activity buses were not incorporated into the waiver of immunity contemplated by the Tort Claims Act.

When considering a case on discretionary review from the Court of Appeals, we review the decision for errors of law. N.C. R. App. P. 16(a). Questions of law regarding the applicability of sovereign or governmental immunity are reviewed de novo. *White v. Trew*, 366 N.C. 360, 362-63, 736 S.E.2d 166, 168 (2013); *accord Craig v. New Hanover Cty. Bd. Of Educ.*, 363 N.C. 334, 335-37, 678 S.E.2d 351, 353-54 (2009).

"The State and its governmental units cannot be deprived of the sovereign attributes of immunity except by a plain, unmistakable mandate of the [General Assembly]." *Orange County v. Heath*, 282 N.C. 292, 296, 192 S.E.2d 308, 310 (1972). In addition, " State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983) (citations omitted). Here "[defendant] is a county agency. As such, the immunity it possesses is more precisely identified as governmental immunity, while sovereign immunity applies to the State and its agencies." *Craig*, 363 N.C. at 335 n.3, 678 S.E.2d at 353 n. 3 (2009). Although this claim implicates sovereign immunity because the State is financially responsible for the payment of judgments against local boards of education for claims brought pursuant to the Tort Claims Act, N.C.G.S. §§ 143-299.4, -300.1(c) (2013), the specific question of the Commission's subject matter jurisdiction over this claim is one of governmental immunity because the named party is the local board of education.

Section 143-300.1 states in pertinent part:

> (a) The North Carolina Industrial Commission shall have jurisdiction to hear and determine tort claims against any county board of education or any city board of education, which claims arise as a result of any alleged . . . negligent act or omission of the driver . . . of a *public school bus or school transportation service vehicle* when:
>
> > (1) The driver is an employee of the county or city administrative unit of which that board is the governing body, and the driver is paid or

> authorized to be paid by that administrative unit. . . .

> and which driver was at the time of the alleged negligent act or omission *operating a public school bus or school transportation service vehicle in accordance with G.S. 115C-242* in the course of his employment by or training for that administrative unit or board . . . .

*Id.* § 143-300.1(a) (emphases added). In 1998 the General Assembly added the language "in accordance with G.S. 115C-242" to the statute. *See* Current Operations Appropriations and Capital Improvement Appropriations Act of 1998, ch. 212, sec. 9.17(b), 1997 N.C. Sess. Laws, 937, 975-76 (Reg. Sess. 1998). Section 115C-242, titled "Use and operation of school buses," is part of the statutory scheme regulating school transportation, and it limits the permissible use of school buses to seven purposes. N.C.G.S. § 115C-242 (2013). As a result, the waiver of immunity and jurisdictional dictates of section 143-300.1 apply only when the bus at issue is being operated "in accordance with" one of the purposes authorized in section 115C-242.

Therefore, in order for the Commission to possess jurisdiction over plaintiff's claim, the government vehicle involved must, *inter alia*, constitute "a public school bus or school transportation service vehicle." Because the vehicle at issue here is a school activity bus, to resolve this matter, we first must address whether a school activity bus is considered a "school bus" or a "school transportation service vehicle" pursuant to section 143-300.1.

Since 1955 the General Assembly has authorized local boards of education to own and operate school buses, as well as provide other transportation for students, "in accordance with rules and regulations adopted by the State Board of Education [(State Board)]" and subject to other specific statutory limits. *Id*. §§ 115C-239 to -262 (2013). Activity buses and transportation service vehicles are among the other significant classes of regulated school transportation vehicles operated by local boards. In accordance with its statutory authority, the State Board has adopted rules and policies directing the operation of all three of these categories of vehicles within the school transportation system.

The General Assembly has defined a "school bus" as

> a vehicle whose primary purpose is to transport school students over an established route to and from school for the regularly scheduled school day, that is equipped with alternately flashing red lights on the front and rear and a mechanical stop signal, that is painted primarily yellow below the roofline, and that bears the plainly visible words "School Bus" on the front and rear. The term includes a public, private, or parochial vehicle that meets this description.

*Id*. § 20-4.01(27)(d4) (2013). The ownership and operation of school buses in particular are subject to a considerable amount of regulation both by statute and the State Board. *See, e.g., id*. § 115C-240(c) (appearance and equipment); *id*. §§ 115C-240(e)-(f), -249 (funding for purchase and maintenance); *id*. §§ 115C-241, -244, -246 (allocation and routes); *id*. §§ 115C-242, -243, -254 (permissible uses); Sch. Support Div., Transp. Servs., N.C. Dep't of Pub. Instruction, *NC Bus Fleet:*

*North Carolina School Transportation Fleet Manual* 5 (June 2015) [hereinafter

Manual] (N.C. State Bd. of Educ. Policy EEO-H-005) (requirements related to

purchase, maintenance, and operation of public school transportation vehicles),

http://www.ncbussafety.org/Manuals/NCBusFleet%20Manual04June2015.pdf.

As noted previously, section 115C-242 directs that "[p]ublic school buses may

be used for the following purposes only," and nearly all of those authorized uses relate

directly to a school's provision of instruction to students. *See* N.C.G.S. § 115C-242(1)

(limiting use to "transportation of pupils enrolled in and employees in the operation

of the school to which [the] bus is assigned" and "transportation to and from such

school for the regularly organized school day"); *id*. § 115C-242(3) (authorizing

operation of school buses one day before the opening of the regular school term to

transport pupils to and from school for registration and for the distribution of

textbooks); *id*. § 115C-242(5) (permitting use and operation for transportation of

pupils and instructional personnel as local boards of education "deem[ ] necessary to

serve the instructional programs of the schools," including "transportation of children

with disabilities and children enrolled in . . . special vocational or occupational

programs" within the state). Those sanctioned uses in section 115C-242 that do not

relate directly to instruction of students allow for the use of school buses for the

community at large and do not involve schools or students at all. *See id*. § 115C-

242(6) (use for "emergency management purposes in any state of disaster"); *id.* § 115C-242(7) (use by senior citizen groups).

Other legal constraints are imposed upon the operation of school buses. By statute, the maximum speed for a school bus is forty-five miles per hour.  *Id.* § 20-218(b) (2013).  In addition, the State Board has adopted uniform, statewide specifications for the appearance, color, and lettering of school buses, and has made certain safety equipment mandatory for school buses only.[1]

In contrast, the General Assembly has defined a "school activity bus" as

> a vehicle, generally painted a different color from a school bus, whose primary purpose is to transport school students and others to or from a place for participation in an event other than regular classroom work.  The term includes a public, private, or parochial vehicle that meets this description.

*Id.* § 20-4.01(27)(d3) (2013).  Further, section 115C-247 of the North Carolina General Statutes, which specifically addresses the purchase and use of activity buses as part of the school transportation statutory scheme, provides:

> The several local boards of education in the State are hereby authorized and empowered to take title to school buses purchased with local or community funds for the purpose of transporting pupils to and from athletic events

---

[1] The State Board's policy states that "[e]ach school bus (not activity bus) shall be equipped with" lights in specific configurations, stop signals, and other safety features unique to school buses.  *See* Sch. Support Div., Transp. Servs., N.C. Dep't of Pub. Instruction, *North Carolina School Bus and Activity Bus Specifications Type C - Conventional Bus* 23 (Nov. 2011), http://www.ncbussafety.org/documents/buses/TypeCSpecs2011.pdf.

and for other local school activity purposes, and commonly referred to as activity buses.

Each local board of education that operates activity buses shall adopt a policy relative to the proper use of the vehicles. The policy shall permit the use of these buses for travel to athletic events during the regular season and playoffs and for travel to other school-sponsored activities.

The provisions of G.S. 115C-42 shall be fully applicable to the ownership and operation of such activity buses.

N.C.G.S. § 115C-247. Section 115C-42, titled "Liability insurance and immunity," allows local boards of education to waive their immunity from tort claims by purchasing liability insurance. *Id.* § 115C-42 (2013). By statute, the maximum speed for a school activity bus is fifty-five miles per hour—ten miles per hour higher than for a school bus. *Id.* § 20-218(b). The State Board also allows more flexibility in the lettering shown on the exterior of activity buses and permits "[a]ctivity bus colors [to] vary."[2]

Although the term "school transportation service vehicle" has not been defined by statute, the State Board has defined these vehicles as "the service vehicles required for maintenance of [school buses for basic to-and-from-school transportation] and delivery of fuel to those buses."[3] The State Board's policy describes these service vehicles as a category of "local vehicles" which "are typically not directly involved in

---

[2] *Id.* at 32, 34.
[3] *Manual* at 8.

the to/from school transportation for grades K-12" and prohibits State funds from being spent on servicing, maintenance, and fuel for such vehicles. *Manual* at 9. In addition, the policy places activity buses in this same category. *Id.* (listing activity buses among the examples shown as types of local vehicles).

When we review a statute that operates to waive governmental immunity, the statute must not only be strictly construed, *Guthrie*, 307 N.C. at 537-38, 299 S.E.2d at 627, but also be given its plain meaning and enforced as written, so long as its language is clear and unambiguous, *Smith Chapel Baptist Church v. City of Durham,* 350 N.C. 805, 811, 517 S.E.2d 874, 878 (1999). We note that the term "activity bus" has never appeared in section 143-300.1, but is treated as a separate category of vehicle in other statutes and regulations.[4] Therefore, we must conclude that the General Assembly and the State Board have defined and managed school buses, activity buses, and school transportation service vehicles as distinct categories of vehicles. This conclusion is further supported by the fact that school buses and activity buses, both of which share the clear purpose of transporting passengers, are patently distinguishable from school transportation service vehicles, which are to be used for the maintenance and repair of school buses. Consequently, we conclude that

---

[4] For example, section 115C-255 refers individually to "school bus drivers, school transportation service vehicle drivers and school activity bus drivers," indicating that the General Assembly recognized a distinction among them all. N.C.G.S. § 115C-255. Numerous other provisions refer to activity buses separately. *See, e.g.*, *Manual* at 5, 6, 9, 13, 18, 31; *see also* N.C.G.S. § 20-4.01(27)(d3); *id.* §§ 115C-247, -248.

an activity bus does not fall within the category of a "school transportation service vehicle."

Even though school buses and school activity buses are immediately and plainly distinguishable by statutory definition, their differing treatment by the legislature in other relevant respects further indicates that a school activity bus is not a mere subset of a school bus. As compared with school buses, which are subject to significant regulation such that the State has remained a functional part-owner of them, the ownership and operation of activity buses are the exclusive province of local school boards. *See* N.C.G.S. § 115C-247. Every use of a school bus that the General Assembly has authorized that involves schools and the transport of students is for a purpose that is fundamentally curricular in nature.

The role of an activity bus within the school transportation system is governed by a separate statute in Chapter 115C, which indicates that activity buses are to be used for students' extracurricular transport needs, specifically, "for the purpose of transporting pupils to and from athletic events and for other local school activity purposes." *Id.* Perhaps most importantly, the General Assembly explicitly provided in this statute the method by which local school boards waive immunity for tort claims arising from the negligent operation of activity buses. Section 115C-247 states that section 115C-42—which authorizes local boards of education to waive their immunity from tort claims by purchasing liability insurance—"shall be fully applicable to the ownership and operation of such activity school buses." *Id.* The

General Assembly enacted sections 115C-247 and 143-300.1 the same year—which supports our conclusion that activity buses were contemplated to be used for school transportation services—yet the method of waiving immunity for the operation of activity buses is markedly different than that employed for a waiver for the operation of a school bus. *Compare* N.C.G.S. § 115C-247 (waiving immunity for operation of activity buses by purchasing liability insurance) *with id.* § 143-300.1 *id.* § 143-300.1 (bringing negligent acts by drivers of "school buses and school transportation service vehicles" under the limited waiver of sovereign immunity provided in the State Tort Claims Act). Therefore, we conclude that activity buses constitute an independent category of school transportation vehicles. Although certain regulations apply equally to both school buses and activity buses, when the legislature has sought to couple the two, it has done so expressly. *See, e.g.*, *id.* § 115C-249.1(a)(2) (defining a "school bus" for purposes of that section as a "school bus" or a "school activity bus"). The legislature has taken no such action with respect to section 143-300.1 or its subject matter. Activity buses plainly are excluded from section 143-300.1, therefore they are not a category of vehicle covered by this statute.

Because section 143-300.1 confers jurisdiction upon the Commission only when "a public school bus or school transportation service vehicle" is at issue, and we have concluded that the school activity bus in this case does not meet this requirement, the Commission does not have jurisdiction in this case. Accordingly, we hold that the Commission properly granted defendant's motion for summary judgment.

REVERSED.

Justice ERVIN did not participate in the consideration or decision of this case.