ELMORE, Judge.
 

 *33
 
 This governmental immunity case concerns whether a county can face liability for making discretionary decisions relating to the manner by which it meets its statutorily delegated responsibilities to ensure its citizens are provided emergency medical services (EMS) and to regulate EMS within its jurisdiction.
 

 Plaintiff Edward Fuller, Sr. served as volunteer treasurer of Six Forks Rescue Squad, Inc. (Six Forks), a non-profit EMS provider franchised by Defendant Wake County to provide EMS within a certain district as part of its county-wide EMS system. Six Forks was required by its franchise agreement to undergo annual audits and to submit those
 
 *34
 
 reports to Wake County. In 2011, Wake County discovered that Six Forks had submitted a fraudulent audit report for fiscal year 2009 (FY2009). This discovery prompted the board of directors of Six Forks (Six Forks Board) to resolve to immediately cease Six Forks's EMS operations and temporarily transfer its emergency vehicles and medical supplies to Wake County; Wake County EMS and other contract providers assumed operational control of EMS delivery within Six Forks's district to ensure seamless provision of EMS to Wake County citizens. Subsequently, the Six Forks Board voted to voluntarily dissolve Six Forks and transfer eight ambulances and two trucks to Wake County, which accepted the vehicles into its county-wide EMS system. Wake County has assumed operational control of Six Forks's service district ever since.
 

 The discovery of Six Forks's fraudulent FY2009 audit report also triggered a criminal investigation by the Raleigh Police Department (RPD), requested in part by the Internal Audit Director of Wake County. The investigation revealed questionable charges to Six Forks's business banking accounts, which were solely managed by its treasurer, Fuller, and its bookkeeper, Jill Cafolla. As a result, Fuller was charged with and arrested for allegedly embezzling $10,000.00 from Six Forks.
 

 After Fuller's embezzlement charge was dismissed, he sued Wake County and ten fictitious defendants, alleging they falsely and maliciously accused him of embezzlement in order to trigger a publicized criminal investigation into Six Forks as a pretext to force an involuntary takeover. Fuller alleged that engineering such a hostile takeover served Wake County's alleged long-term stated goal to consolidate independent EMS providers into its county-wide EMS system. In response, Wake County raised the complete defense of governmental immunity and moved to dismiss Fuller's claims. After a hearing, the trial court entered an order dismissing Fuller's claims as to the fictitious defendants on grounds that they were barred by the statute of limitations. Wake County later moved for summary judgment on grounds of governmental immunity. After a hearing, the trial court entered an order awarding Wake County summary judgment,
 
 *109
 
 thereby dismissing Fuller's claims with prejudice.
 

 On appeal, Fuller argues that (1) Wake County's actions were proprietary and, therefore, unshielded by governmental immunity; and (2) Wake County waived any immunity it might enjoy. Fuller also argues that (3) Wake County is liable to him as a transferee of Six Forks's assets under statutory and common law successor-liability theories. After careful review, we affirm the trial court's order.
 

 *35
 

 I. Background
 

 Since 1976, Wake County has issued Six Forks annual franchises to provide EMS to its citizens within a certain district as part of its county-wide EMS system. The franchise agreement required Six Forks to engage in annual audits and to submit those reports to the Wake County's Director of Budget and Management Services, Finance Officer, and EMS Director, no later than 1 October of each succeeding fiscal year.
 

 In 2009, Fuller was elected by the Six Forks Board to serve as Six Forks's treasurer. In 2010, Wake County officials discovered that it did not have a budget from Six Forks or a copy of Six Forks's FY2009 audit report. At Wake County EMS Medical Director Brent Myers's request, around 16 June 2010, Cafolla sent a FY2009 audit report to Chief of Six Forks Daniel Cline, who then forwarded it to Wake County officials. In February 2011, Wake County was alerted that Six Forks failed to submit its FY2010 audit report and, after several unanswered requests, discovered that Fuller had failed to secure an auditor for FY2010.
 

 In March 2011, Wake County Internal Audit Director John Stephenson met with Myers, Cline, and Fuller, to review Six Forks's cash projection in order to ensure its payroll and bill obligations would be met. During the meeting, Stephenson closely reviewed the FY2009 audit and opined that it reported a $65,000.00 profit but should have shown a $2,000.00 loss and contained a potentially fraudulent signature. Six Forks's FY2009 audit was then forwarded to and investigated by the North Carolina State Board of Certified Public Accountant Examiners, which confirmed the signature had been forged. In late April 2011, Stephenson alerted Fuller and Six Forks the FY2009 audit was a fake. On 1 May 2011, at President of Six Forks Ed Bottum's request, Fuller resigned as its treasurer.
 

 On 2 May 2011, the Six Forks Board called an emergency meeting and resolved immediately to cease its EMS operations and to transfer its eight ambulances, two trucks, and medical supplies to Wake County for the next 30 days in order "to maintain seamless emergency medical care to the citizens of Wake County." Wake County EMS and a few other contract providers assumed operational coverage of Six Forks's service district and, around 21 June 2011, Six Forks and Wake County executed an asset transfer agreement to effectuate the transfer of Six Forks's emergency vehicles to Wake County. According to the agreement, Wake County accepted the vehicles, valued at $348,450.00, for $1 of consideration.
 

 On 3 May 2011, according to police reports, Cline called the RPD and reported that Cafolla had submitted the fraudulent FY2009 audit, causing
 
 *36
 
 Six Forks to disband. Soon after, Stephenson also reported the fraudulent FY2009 audit to the RPD and provided further information about the events leading up to its discovery. Noting Stephenson's request that Wake County would like the case investigated, the RPD commenced an investigation into the allegations of fraud at Six Forks revealing multiple non-business related expenses charged to Six Forks's business banking account at Coastal Federal Credit Union (CFCU), an account solely controlled and managed by Fuller and Cafolla. The expenses included two $5,000.00 checks written in early 2011 for undocumented purposes and charges totaling $9,825.36 to a debit card linked to Six Forks's business banking account at CFCU in 2009.
 

 On 6 May 2011, as part of its investigation, RPD detectives met with Stephenson, who provided additional information about the incidents leading up to the discovery of the FY2009 audit, a binder of recorded expenses and box of financial information recovered from the Six Forks station, as well as copies of Six Forks's meeting minutes. According to
 
 *110
 
 police reports, the minutes from 12 October 2009 indicated that Fuller explained to the Six Forks Board that the $9,825.36 of charges to Six Forks's CFCU business account arose because the debit card was mistakenly linked to his son's personal CFCU banking account. Fuller explained that his son, Edward Fuller, Jr., believed the debit card was his and mistakenly incurred the charges to Six Forks's CFCU account. Stephenson told RPD he requested Six Forks's banking statements from CFCU and Wachovia but was only given limited information. RPD resolved to obtain search warrants to collect this information.
 

 On 13 June 2011, an RPD investigating officer contacted a representative at CFCU to gather Six Forks's banking information and inquired as to whether Fuller's explanation of the debit card mix-up was possible. The CFCU representative opined that it was not and that the $9,825.36 had not been repaid into the account. RPD later discovered that, immediately before the debit card transactions started in May 2009, Fuller transferred $10,000.00 from the Six Forks CFCU business commercial checking account into a business basic checking account. Fuller deposited $9,242.14 from his personal CFCU banking account into the business basic checking account on 10 November 2009. RPD also discovered several miscellaneous withdrawals from and deposits to the Six Forks Wachovia and CFCU banking accounts by Cafolla. Between Fuller and Cafolla nearly $90,000.00 of unapproved transactions were identified. Subsequently, after conferring with an on-call assistant district attorney of the Wake County District Attorney's Office, RPD determined that Fuller and Cafolla should be charged with embezzlement.
 

 *37
 
 On 24 July 2011, the Six Forks Board adopted a plan of Six Forks's dissolution and a distribution of its assets. On 22 September 2011, RPD arrested Fuller for allegedly embezzling $10,000.00 from Six Forks. On 10 October 2011, Six Forks delivered a victim impact statement to Wake County, stating that Fuller and Cafolla's actions caused its dissolution. According to Fuller, his charge and arrest were publicized by local news media, thereby causing him to be terminated from his long-time employment as Director of the Master of Business Administration program at Pfeiffer University. On some date unclear from the record, Fuller's embezzlement charge was dismissed.
 

 On 17 September 2014, Fuller filed a complaint against Wake County and ten fictitious John Does, alleging they had falsely accused him of embezzlement in order to trigger a publicized criminal investigation indicating Six Forks had engaged in financial mismanagement as a pretext for compelling an involuntary takeover of Six Forks. In his complaint, Fuller alleged that, as early as 2007, Wake County expressed its long-term goal to take over independent EMS if "there is mismanagement of money internally or poor patient care" and to consolidate EMS delivery to its citizens. Fuller further alleged that in 2009, after discovering the debit card mix-up, he fully disclosed the situation to the Six Forks Board and reimbursed Six Forks the charges his son mistakenly accumulated on the Six Forks CFCU business banking account. Nonetheless, Fuller contended, Wake County falsely and maliciously accused him of embezzlement, citing the debit card incident, and indicated that Fuller was living with Cafolla, in order to initiate a publicized criminal investigation indicating Six Forks had engaged in financial mismanagement as a means to force an involuntary take over Six Forks.
 

 In his 17 September 2014 complaint, Fuller advanced six tort claims against Wake County and the ten John Does: (1) malicious prosecution, (2) abuse of process, (3) false arrest, (4) false imprisonment, (5) intentional infliction of severe emotional distress, and (6) respondeat superior, seeking monetary damages from those defendants. On 19 March 2015, Wake County filed its answer, asserting Fuller's claims were barred by governmental immunity and the statute of limitations and filed a motion to dismiss Fuller's claims. After a hearing on Wake County's dismissal motion, the trial court entered a 13 July 2015 order dismissing the claims against the ten fictitious defendants on grounds that Fuller's claims were barred by statutes of limitation. On 23 November 2015, Wake County filed a motion for summary judgment,
 
 *111
 
 reasserting that Fuller's claims against it were barred by governmental immunity.
 
 *38
 
 On 9 March 2016, Fuller filed a "notice of claim against assets" against Wake County under Chapter 55A of the North Carolina General Statutes (the North Carolina Nonprofit Corporation Act), alleging violations of N.C. Gen. Stat. § 55A-14-08 ("Unknown and certain other claims against dissolved corporation") by failing to notify Fuller of Six Forks's dissolution before transferring its assets essentially debt-free to Wake County.
 

 On 15 March 2016, the trial court held a hearing on Wake County's summary judgment motion. Wake County argued it was shielded by governmental immunity from Fuller's claims because the provision of EMS is a governmental function, and it assumed operational control of EMS within Six Forks's service district in order to satisfy its statutory obligation to ensure its citizens are provided with EMS. Wake County also presented evidence establishing that, although it had purchased a public entity excess liability insurance policy, it did not waive its immunity with respect to Fuller's claims.
 

 On 24 March 2016, the trial court entered an order awarding Wake County summary judgment and dismissing Fuller's case with prejudice. Fuller appeals.
 

 II. Analysis
 

 On appeal, Fuller argues the court erred by awarding Wake County summary judgment because Wake County (1) was engaged in a proprietary activity unshielded by governmental immunity and (2) waived any applicable governmental immunity by entering into the asset transfer agreement with Six Forks and by requiring under the franchise agreement that Six Forks purchase liability insurance and name Wake County as an insured on the policy. Fuller also argues the trial court erred because (3) Wake County was liable to him as a transferee of Six Forks's assets under statutory and common law successor-liability theories.
 

 A. Standard of Review
 

 This Court reviews
 
 de novo
 
 an order granting summary judgment.
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008) (citing
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 523-24,
 
 649 S.E.2d 382
 
 , 385 (2007) ). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' "
 
 Dawes v. Nash Cnty.
 
 ,
 
 357 N.C. 442
 
 , 444,
 
 584 S.E.2d 760
 
 , 762 (2003) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) ). A party is entitled to judgment as a matter of law " 'whenever the movant establishes a complete
 
 *39
 
 defense to the [plaintiff's] claim.' "
 
 Estate of Earley ex rel. Earley v. Haywood Cnty. Dep't of Soc. Servs.
 
 ,
 
 204 N.C.App. 338
 
 , 340,
 
 694 S.E.2d 405
 
 , 407 (2010) ) (reversing summary judgment on governmental immunity grounds) (quoting
 
 Overcash v. Statesville City Bd. of Educ.
 
 ,
 
 83 N.C.App. 21
 
 , 26,
 
 348 S.E.2d 524
 
 , 528 (1986) (affirming summary judgment on governmental immunity grounds)). Governmental immunity is a "complete defense."
 
 Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.
 
 ,
 
 363 N.C. 334
 
 , 337,
 
 678 S.E.2d 351
 
 , 354 (2009) (noting that governmental "immunity is more than a mere affirmative defense, as it shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages" (citing
 
 Mitchell v. Forsyth
 
 ,
 
 472 U.S. 511
 
 , 525,
 
 105 S.Ct. 2806
 
 ,
 
 86 L.Ed.2d 411
 
 (1985) ).
 

 B. Governmental Immunity
 

 "Under the doctrine of governmental immunity, a county ... ' "is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." ' "
 
 Estate of Williams ex rel. Overton v. Pasquotank Cnty. Parks & Recreation Dep't
 
 ,
 
 366 N.C. 195
 
 , 198,
 
 732 S.E.2d 137
 
 , 140 (2012) (quoting
 
 Meyer v. Walls
 
 ,
 
 347 N.C. 97
 
 , 104,
 
 489 S.E.2d 880
 
 , 884 (1997),
 
 quoted in
 

 Evans ex rel. Hornton v. Hous. Auth. of City of Raleigh
 
 ,
 
 359 N.C. 50
 
 , 53,
 
 602 S.E.2d 668
 
 , 670 (2004) ). A county is also generally immune from suit for intentional torts of its employees in the exercise of governmental functions.
 
 See
 

 Edwards v. Akion
 
 ,
 
 52 N.C.App. 688
 
 , 691,
 
 279 S.E.2d 894
 
 , 896,
 
 aff'd per curiam
 
 ,
 
 304 N.C. 585
 
 , 586,
 
 284 S.E.2d 518
 
 , 518 (1981). "Immunity applies to
 
 *112
 
 acts committed pursuant to governmental functions but not proprietary functions."
 
 Bynum v. Wilson Cnty.
 
 ,
 
 367 N.C. 355
 
 , 358,
 
 758 S.E.2d 643
 
 , 646 (2014) (citing
 
 Estate of Williams
 
 ,
 
 366 N.C. at 199
 
 ,
 
 732 S.E.2d at
 
 141 ). Governmental functions comprise county activity " 'which is discretionary, political, legislative, or public in nature and performed for the public good [on] behalf of the State rather than for itself....' "
 

 Id.
 

 (quoting
 
 Britt v. City of Wilmington
 
 ,
 
 236 N.C. 446
 
 , 450,
 
 73 S.E.2d 289
 
 , 293 (1952) ). Proprietary functions comprise county activity which is " 'commercial or chiefly for the private advantage of the compact community....' "
 

 Id.
 

 Whether a county enjoys governmental immunity "turns on whether the alleged tortious conduct of the county ... arose from an activity that was governmental or proprietary in nature."
 
 Estate of Williams
 
 ,
 
 366 N.C. at 199
 
 ,
 
 732 S.E.2d at 141
 
 .
 

 Here, the parties dispute the relevant activity for purposes of determining governmental immunity. Fuller contends Wake County's "hostile, commercial acquisition of the assets of an ongoing profitable business in an effort to expand an existing business operated by Wake County" constitutes the relevant activity. Wake County contends its operation of EMS
 

 *40
 
 and ambulance service constitutes the relevant activity. The alleged tortious conduct of Wake County-fabricating false embezzlement charges against Fuller in order to trigger a publicized criminal investigation as a pretext for forcing an involuntary takeover of Six Forks-can be separated into two distinct categories: (1) Fuller's criminal investigation, i.e., Wake County Internal Audit Director John Stephenson providing information to the RPD regarding the FY2009 fraudulent audit and requesting that RPD investigate potential fraud at Six Forks; and (2) Wake County's consolidation of Six Forks into its county-wide EMS system, i.e., Wake County accepting Six Forks's EMS vehicles and directing Wake County EMS and other contract providers to assume operational control of Six Forks's service district. Because there are no individual-capacity claims against Stephenson or any other Wake County official or employee, only the latter category is properly under consideration. The relevant inquiry, then, is whether these county activities arose out of a function that was governmental or proprietary.
 

 Acknowledging "the distinction may be difficult" our Supreme Court in
 
 Estate of Williams
 
 "set forth a three-step inquiry for determining whether an activity is governmental or proprietary in nature."
 
 Bynum
 
 ,
 
 367 N.C. at 358
 
 ,
 
 758 S.E.2d at
 
 646 (citing
 
 Estate of Williams
 
 ,
 
 366 N.C. at 200-01
 
 ,
 
 732 S.E.2d at
 
 141-42 ). "[T]he threshold inquiry ... is whether, and to what degree, the legislature has addressed the issue."
 
 Estate of Williams
 
 ,
 
 366 N.C. at 200
 
 ,
 
 732 S.E.2d at 141-42
 
 . "[T]hat the legislature has designated [certain county] responsibilities as governmental is dispositive" of the issue of whether county activity arising from executing statutorily delegated responsibilities is immune from suit.
 
 Bynum
 
 ,
 
 367 N.C. at 360
 
 ,
 
 758 S.E.2d at 647
 
 (construing
 
 Estate of Williams
 
 and holding that county's supervision, maintenance, and responsibility of county buildings were activities arising from a governmental function, since the General Assembly delegated that authority to county and, therefore, county was immune from alleged negligence in failing to maintain its building);
 
 see also
 

 Bellows v. Asheville City Bd. of Educ.
 
 , --- N.C.App. ----, ----,
 
 777 S.E.2d 522
 
 , 524 (2015) (relying on
 
 Bynum
 
 to hold that statutory delegation of authority to local board to maintain its school grounds dispositively established activity arising therefrom was governmental and, therefore, board was immune from tort liability arising from allegedly unsafe conditions on school grounds),
 
 disc. rev. denied
 
 ,
 
 368 N.C. 684
 
 ,
 
 781 S.E.2d 482
 
 (2016). In reaching its holding, the
 
 Bynum
 
 Court cited to N.C. Gen. Stat. § 153A-169 (2013) ("The board of commissioners
 
 shall
 
 supervise the maintenance, repair, and use of all county property." (emphasis added)), and to N.C. Gen. Stat. §§ 153A-351, -352 (2013), which it interpreted as "requiring counties to perform duties
 
 *41
 
 and responsibilities associated with enforcing State and local laws and ordinances relating to,
 
 inter alia
 
 , construction and maintenance of buildings."
 
 Bynum
 
 ,
 
 367 N.C. at 360
 
 ,
 
 758 S.E.2d at 647
 
 .
 

 Here, the General Assembly has assigned Wake County the responsibilities of
 
 *113
 
 ensuring its citizens are provided with EMS and of regulating EMS delivery within its jurisdiction, functions which can only be performed by Wake County.
 
 See
 

 N.C. Gen. Stat. § 143-517
 
 (2015) ("Each county
 
 shall
 
 ensure that emergency medical services are provided to its citizens." (emphasis added));
 
 see also
 
 N.C. Gen. Stat. § 153A-250 (2015) (permitting counties to operate EMS or to franchise EMS within its jurisdiction, and granting counties broad powers to regulate EMS delivery). Wake County's decision that Wake County EMS and other contract providers assume operational control of Six Forks after its board resolved to cease its EMS operations, and Wake County's subsequent decision to accept the transfer of Six Forks's EMS vehicles for use by Wake County EMS after Six Forks's voluntary dissolution, were discretionary decisions satisfying Wake County's statutorily delegated responsibility to ensure its citizens are provided with EMS and to regulate those EMS within its jurisdiction. Applying
 
 Bynum
 
 , "that the legislature has designated these responsibilities as governmental is dispositive."
 
 367 N.C. at 360
 
 ,
 
 758 S.E.2d at 647
 
 .
 

 Assuming
 
 arguendo
 
 we needed to consider the next step in
 
 Estate of Williams
 
 , that the activities arose from functions that can only be performed by Wake County-ensuring its citizens are provided with EMS and regulating the manner by which those EMS are furnished-establishes that the activities are governmental.
 
 See
 

 Estate of Williams
 
 ,
 
 366 N.C. at 202
 
 ,
 
 732 S.E.2d at 142
 
 ("[An] activity is necessarily governmental in nature when it can only be provided by a governmental agency or instrumentality.").
 

 Accordingly, because Wake County's alleged tortious conduct of engineering an involuntary takeover of Six Forks arose from its statutorily delegated responsibilities to ensure its citizens EMS and to regulate EMS within its jurisdiction, governmental functions which can only be performed by Wake County, we hold that Wake County satisfied its burden of establishing that its governmental immunity barred Fuller's tort claims arising therefrom.
 

 C. Waiver
 

 Fuller next contends that Wake County waived its immunity by entering into the asset transfer agreement with Six Forks and by requiring Six Forks as part of the franchise agreement to purchase liability
 
 *42
 
 insurance and to designate Wake County as an insured on the policy. We disagree.
 

 Generally, a county may waive its governmental immunity by (1) engaging in a proprietary activity; (2) entering into a valid contract, thereby consenting to be sued; or (3) purchasing liability insurance, but only to the extent of coverage.
 
 See, e.g.
 
 ,
 
 Howard v. Cnty. of Durham
 
 ,
 
 227 N.C.App. 46
 
 , 49,
 
 748 S.E.2d 1
 
 , 3 (2013) (recognizing that counties may waive immunity by entering into a contract);
 
 see also
 
 N.C. Gen. Stat. § 153A-435(a) (2015) (authorizing counties to waive immunity by purchasing insurance).
 

 Initially, we note that Wake County had purchased two nearly identical public entity excess liability insurance policies spanning two policy periods and satisfied its burden at the summary judgment hearing to establish these policies did not waive its immunity as to Fuller's claims. We have repeatedly held that virtually identical language contained within the governmental immunity endorsement of Wake County's liability policies do not waive immunity for claims barred by governmental immunity.
 
 See, e.g.
 
 ,
 
 Bullard v. Wake Cnty.
 
 ,
 
 221 N.C.App. 522
 
 , 527-28,
 
 729 S.E.2d 686
 
 , 690 (holding county did not waive immunity through purchasing policy containing exact endorsement here),
 
 disc. rev. denied
 
 ,
 
 366 N.C. 409
 
 ,
 
 735 S.E.2d 184
 
 (2012).
 

 As to his first argument, Fuller appears to assert a contract theory of waiver, by which a county entering into a valid contract " 'implicitly consents to be sued for damages on the contract in the event it breaches the contract.' "
 
 AGI Assocs. v. City of Hickory, N.C.
 
 ,
 
 773 F.3d 576
 
 , 579 (4th Cir. 2014) (alteration omitted) (quoting
 
 Smith v. State
 
 ,
 
 289 N.C. 303
 
 , 320,
 
 222 S.E.2d 412
 
 , 424 (1976) ). Yet Fuller never properly pled a breach of contract claim against Wake County, and neither presented evidence that Wake County breached that contract, nor, importantly, that Fuller was a party thereto.
 
 See
 

 *114
 

 Howard
 
 ,
 
 227 N.C.App. at 50
 
 ,
 
 748 S.E.2d at 3
 
 (concluding that, to show a county waived immunity under contract theory of waiver, the plaintiff must properly plead a valid contract between the plaintiff and the county). Additionally, we note that Fuller has failed to cite any legal authority to support his theory that Wake County waived its immunity by entering into the asset transfer agreement with Six Forks.
 
 See
 

 Moss Creek Homeowners Ass'n v. Bissette
 
 ,
 
 202 N.C.App. 222
 
 , 233,
 
 689 S.E.2d 180
 
 , 187 (2010) ("[I]t is the duty of appellate counsel to provide sufficient legal authority to this Court, and failure to do so will result in dismissal. N.C. R. App. P. 28(b)(6). Thus, because the [appellants] have failed to cite any legal authority whatsoever in support of their argument ..., we conclude this issue does not warrant appellate
 
 *43
 
 review." (citing
 
 Pritchett & Burch, PLLC v. Boyd
 
 ,
 
 169 N.C.App. 118
 
 ,
 
 609 S.E.2d 439
 
 , 443,
 
 disc. rev. dismissed
 
 ,
 
 359 N.C. 635
 
 ,
 
 616 S.E.2d 543
 
 (2005) ;
 
 Hatcher v. Harrah's N.C. Casino Co.
 
 ,
 
 169 N.C.App. 151
 
 , 159,
 
 610 S.E.2d 210
 
 , 214-15 (2005) ). Accordingly, we overrule this argument.
 

 As to his second argument, Fuller has failed to cite any relevant legal authority to support his contention that the franchise agreement between Wake County and Six Forks, which required Six Forks to purchase general liability insurance and to name Wake County as an insured, constituted waiver. Nonetheless, Fuller appears to be asserting a purchase of liability insurance waiver theory.
 

 "The State and its governmental units cannot be deprived of the sovereign attributes of immunity except by a plain, unmistakable mandate of the [General Assembly]."
 
 Irving v. Charlotte-Mecklenburg Bd. of Educ.
 
 ,
 
 368 N.C. 609
 
 , 611,
 
 781 S.E.2d 282
 
 , 284 (2016) (quoting
 
 Orange Cnty. v. Heath
 
 ,
 
 282 N.C. 292
 
 , 296,
 
 192 S.E.2d 308
 
 , 310 (1972) ). "In the absence of statutory authority a municipality has no power to waive its governmental immunity."
 
 Heath
 
 ,
 
 282 N.C. at 294
 
 ,
 
 192 S.E.2d at
 
 310 (citing
 
 Stephenson v. City of Raleigh,
 

 232 N.C. 42
 
 , 47,
 
 59 S.E.2d 195
 
 , 199 (1950) ). A statute operating to waive governmental immunity "must not only be strictly construed, but also be given its plain meaning and enforced as written, so long as its language is clear and unambiguous."
 
 Irving
 
 , 368 N.C. at 615, 781 S.E.2d at 286 (citations omitted). Relevant here, N.C. Gen. Stat. § 153A-435(a) authorizes a county to waive its immunity and provides in pertinent part: "
 
 Purchase
 
 of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function." (Emphasis added.)
 

 Although Six Forks's liability insurance policy neither was presented to the trial court nor included in the appellate record, the franchise agreement requiring the policy makes clear that such a policy was purchased, if at all, by Six Forks, and not by Wake County. Additionally, we note the franchise agreement explicitly provided: "Nothing in this [indemnification] provision is intended to affect or abrogate [Wake] County's governmental immunity...." Strictly construing the plain language of N.C. Gen. Stat. § 153A-435 's immunity waiver to apply to insurance policies actually purchased by the county, we hold that Fuller failed to establish a genuine issue of material fact that Wake County waived its immunity in this respect.
 

 Because Fuller presented no genuine issue of material fact that Wake County waived its immunity by entering into the asset transfer
 
 *44
 
 agreement or by requiring Six Forks to purchase liability insurance and to name Wake County as an insured, the trial court properly awarded Wake County summary judgment.
 

 D. Successor Liability
 

 Fuller next contends that Wake County is liable to him as a transferee of Six Forks's assets under two distinct successor-liability theories: that Wake County is statutorily liable under the North Carolina Nonprofit Corporation Act and liable under common law as survivor of a de facto merger with Six Forks.
 

 Although Fuller's 17 September 2014 complaint advanced six tort claims against Wake County, on 9 March 2016, Fuller attempted to advance a Chapter 55A claim against Wake County under section 55A-14-08 of the North Carolina Nonprofit Corporation Act,
 
 *115
 
 merely six days before the hearing on Wake County's summary judgment motion on immunity grounds. During this hearing, Fuller argued his statutory and common law theories of successor liability. Subsequently, the trial court entered its order awarding Wake County summary judgment and dismissing Fuller's case with prejudice.
 

 In his underlying complaint, Fuller never advanced a claim against Six Forks pursuant to which a common law theory of successor liability might attach to Wake County.
 
 See, e.g.
 
 ,
 
 Bailey v. Handee Hugo's, Inc.
 
 ,
 
 173 N.C.App. 723
 
 , 727-28,
 
 620 S.E.2d 312
 
 , 316 (2005) ("Necessary parties must be joined in an action." (citing
 
 Crosrol Carding Devs., Inc. v. Gunter & Cooke, Inc.
 
 ,
 
 12 N.C.App. 448
 
 , 451,
 
 183 S.E.2d 834
 
 , 837 (1971) ). Fuller never filed a motion to amend his complaint to include any successor-liability claim.
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 15 (2015) (mandating that after responsive pleadings have been filed, "a party may amend his pleading
 
 only
 
 by leave of court or by written consent of the adverse party" (emphasis added));
 
 see also
 

 Wells v. Cumberland Cnty. Hosp. Sys., Inc.
 
 ,
 
 150 N.C.App. 584
 
 , 589,
 
 564 S.E.2d 74
 
 , 78 (2002) (" 'A party is bound by his pleadings and, unless withdrawn, amended, or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive as against the pleader.' " (quoting
 
 Davis v. Rigsby
 
 ,
 
 261 N.C. 684
 
 , 686,
 
 136 S.E.2d 33
 
 , 34 (1964) ). Nor did Fuller move the court to order a separate trial of any non-tort claim.
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 42(b)(1) (2015) ("The court may in furtherance of convenience or to avoid prejudice ...
 
 upon timely motion
 
 order a separate trial of any claim ..., or of any separate issue...." (emphasis added)).
 

 Although Fuller attempted to advance a statutory successor-liability claim by filing a "notice of claim against assets" against Wake County
 
 *45
 
 just six days before the summary judgment hearing, Fuller's underlying complaint contained no causes of action pertaining to these assets, made no mention of those assets, and did not purport to be an action filed under Chapter 55A.
 
 See
 

 Lawyers Title Ins. Corp. v. Langdon
 
 ,
 
 91 N.C.App. 382
 
 , 387,
 
 371 S.E.2d 727
 
 , 731 (1988) ("[A party] cannot seek a monetary judgment against two corporate defendants in his original complaint, then amend the complaint to include an action to enforce a lien against individuals, non-parties to the original complaint, whose property interest had never been a subject of the suit."). Further, Fuller failed to cite any case law supporting his position that Wake County can face liability under Chapter 55A as a transferee of Six Forks's assets, nor have any cases been disclosed by our research.
 

 Accordingly, because Fuller never properly pled these two successor-liability claims below, we decline to address the merits of these arguments.
 

 III. Conclusion
 

 Because the alleged tortious conduct of Wake County arose from its statutory obligations to ensure its citizens are provided EMS and to regulate EMS within its jurisdiction, both of which are governmental functions, Wake County established that it was entitled to summary judgment as a matter of law, and Fuller raised no genuine issue of material fact that Wake County was acting in a proprietary manner. Wake County established that it had not waived its immunity, and Fuller presented no genuine issue of material fact to the contrary. Finally, because Fuller failed to plead properly his successor-liability claims below, we decline to address these arguments on appeal. Accordingly, we affirm the trial court's order.
 

 AFFIRMED.
 

 Judges DILLON and ZACHARY concur.