IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-893

Filed 17 October 2023

North Carolina Industrial Commission, No. TA-29098

JERMOND WILLIAMS, Plaintiff,

v.

CHARLOTTE-MECKLENBURG SCHOOLS BOARD OF EDUCATION, Defendant.

Appeal by Defendant from the order entered 14 July 2022 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 April 2023.

*Jermond Williams, Pro Se Plaintiff-Appellee.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Carl Newman, for Defendant-Appellant.*

CARPENTER, Judge.

The Charlotte-Mecklenburg Schools Board of Education (the "Board") appeals from the North Carolina Industrial Commission's (the "Commission's") denial of the Board's motion for summary judgment. After careful review, we affirm the Commission's denial of summary judgment.

## I. Factual & Procedural Background

On 10 March 2020, Governor Roy Cooper issued Executive Order 116 and declared a state of emergency because of the Covid-19 pandemic. On 14 March 2020, Governor Cooper issued Executive Order 117, which closed North Carolina schools

and ordered "the North Carolina Department of Public Instruction . . . to implement measures to provide for the health, nutrition, safety, educational needs, and well-being of children during the school closure period." Governor Cooper then issued Executive Order 169, which extended these provisions through 23 October 2020.

On 22 October 2020, Gerald Rand, a bus driver for the Board, drove a bus[1] for the purpose of delivering meals to remote-learning students. That day, Rand's bus collided with Jermond Williams' ("Plaintiff's") parked car in Charlotte, North Carolina. On 7 January 2021, under North Carolina's Tort Claims Act (the "TCA"), Plaintiff filed a property-damage claim with the Commission against the Board. After discovery, the Board moved for summary judgment based on sovereign or governmental immunity.[2] Specifically, the Board argued that it maintained immunity because Rand, pursuant to the North Carolina Emergency Management Act (the "EMA"), was performing an emergency-management activity during the alleged negligence. The Board further argued the EMA explicitly maintains immunity for such incidents. In other words, the Board acknowledged that the TCA and the EMA

---

[1] In his complaint, Plaintiff refers to Rand's bus as simply a "bus."

[2] Here, the Board is a county agency. Therefore, the applicable immunity is more precisely labeled "governmental immunity." *See Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 368 N.C. 609, 611, 781 S.E.2d 282, 284 (2016). In this case, however, the distinction is immaterial, as "this claim implicates sovereign immunity because the State is financially responsible for the payment of judgments against local boards of education for claims brought pursuant to the Tort Claims Act . . . ." *See id.* at 611, 781 S.E.2d at 284.

conflict concerning waiver of immunity, but the Board argued that the EMA should control.

A deputy commissioner denied the Board's motion for summary judgment, and the Board timely appealed to the full Commission. On 14 July 2022, the full Commission panel agreed that the EMA conflicts with the TCA concerning waiver of sovereign immunity for bus-accident claims. Nevertheless, the Commission concluded the Board's immunity is waived by the TCA. Thus, the full Commission affirmed the deputy commissioner's denial of summary judgment. On 15 August 2022, the Board timely appealed to this Court.

## II.    Jurisdiction

As an initial matter, we must consider whether this Court has jurisdiction over an interlocutory order from the Commission. Under N.C. Gen. Stat. § 143-293 (2021), we conclude that we do. *See Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 383 N.C. 31, 44, 881 S.E.2d 558, 568–69 (2022) (acknowledging appellate jurisdiction of an interlocutory appeal from the Commission's denial of a motion to dismiss a TCA claim because the appeal involved a substantial right); *Multiple Claimants v. N.C. Dep't of Health & Hum. Servs., Div. of Facility & Det. Servs.*, 176 N.C. App. 278, 282, 626 S.E.2d 666, 669 (2006) (acknowledging appellate jurisdiction of an interlocutory appeal from the Commission's denial of a motion to dismiss a TCA claim because the appeal involved a substantial right). As we typically

lack jurisdiction to address interlocutory appeals from the Commission, we will detail why we have jurisdiction over this case.

Appeals from the Commission concerning claims brought through the TCA are made "under the same terms and conditions as govern ordinary appeals in civil actions." N.C. Gen. Stat. § 143-293. Therefore, our analysis begins with the premise that, as in ordinary civil appeals, there generally is "no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). Similarly, this Court lacks jurisdiction over interlocutory appeals from the Commission. *See* N.C. Gen. Stat. § 7A-29 (2021); *Vaughn v. N.C. Dep't of Hum. Res.*, 37 N.C. App. 86, 89, 245 S.E.2d 892, 894 (1978) ("No appeal lies from an interlocutory order of the Industrial Commission.") (citing N.C. Gen. Stat. § 7A-29).

There is an exception to this rule, however, when an interlocutory appeal affects a "substantial right." *Sharpe v. Worland*, 351 N.C. 159, 161–62, 522 S.E.2d 577, 579 (1999) (stating that North Carolina's appellate courts have jurisdiction over interlocutory appeals that affect a substantial right). A "[d]enial of a summary judgment motion is interlocutory and ordinarily cannot be immediately appealed." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009). But "the denial of summary judgment on grounds of sovereign immunity is immediately appealable, though interlocutory, because it represents a substantial right . . . ." *Id.* at 338, 678 S.E.2d at 354.

This case involves a TCA claim, and the Board appeals from the denial of summary judgment based on sovereign immunity. Because "the denial of summary judgment on grounds of sovereign immunity" affects a "substantial right," this Court has jurisdiction. *See id.* at 338, 678 S.E.2d at 354; *see also* N.C. Gen. Stat. § 143-293; *Cedarbrook Residential*, 383 N.C. at 44, 881 S.E.2d at 568–69. Thus, despite our general rule against hearing interlocutory appeals, this Court has jurisdiction in this case under N.C. Gen. Stat. § 143-293.

### III.   Issue

The issue on appeal is whether the Commission erred in denying the Board's motion for summary judgment.

### IV.   Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

### V.   Analysis

On appeal, the Board argues the Commission erred in denying its motion for summary judgment because the Board maintains sovereign immunity under the EMA. After careful review, we disagree: The Commission did not err in denying the

Board's motion for summary judgment because genuine issues of material fact remain.

Summary judgment is appropriate when "there is no genuine issue as to any material fact," and a party is "entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, R. 56(c) (2021). Concerning summary judgment, courts "must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). Indeed, "[s]ince this rule provides a somewhat drastic remedy, it must be used with due regard to its purposes and a cautious observance of its requirements in order that no person shall be deprived of a trial on a genuine disputed factual issue." *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971).

Therefore, we must separate factual questions from legal questions to discern the applicability of summary judgment. *See* N.C. Gen. Stat. § 1A-1, R. 56(c). Generally, "[a]ny determination reached through 'logical reasoning from the evidentiary facts' is more properly classified as a finding of fact." *IPayment, Inc. v. Grainger*, 257 N.C. App. 307, 315, 808 S.E.2d 796, 802 (2017) (quoting *Quick v. Quick*, 305 N.C. 446, 452, 290 S.E.2d 653, 657–58 (1982)). And when an answer requires application of legal principles to the facts, the prompting question is a mixed one of both law and fact. *See Town of Apex v. Rubin*, 277 N.C. App. 328, 332 n.5, 858 S.E.2d 387, 392 n.5 (2021).

The central issue here concerns sovereign immunity. Generally, "[u]nder the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity." *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). "The State and its governmental units" do not waive sovereign immunity except "by a plain, unmistakable mandate of the [General Assembly]." *Orange County. v. Heath*, 282 N.C. 292, 296, 192 S.E.2d 308, 310 (1972). Further, "statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 537–38, 299 S.E.2d 618, 627 (1983).

The TCA "provides a limited waiver of immunity and authorizes recovery against the State for negligent acts of its 'officer[s], employee[s], involuntary servant[s] or agent[s].'" *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013) (quoting N.C. Gen. Stat. § 143-291(a)). Specifically, the State has waived immunity for claims that are the "result of any alleged negligent act or omission of the driver" of a school bus. N.C. Gen. Stat. § 143-300.1(a) (2021).

Under the EMA, however, "[n]either the State nor any political subdivision thereof . . . shall be liable for the death of or injury to persons, or for damage to property as a result of any [emergency management] activity." N.C. Gen. Stat. § 166A-19.60(a) (2021). "Emergency management" includes "[t]hose measures taken by the populace and governments at federal, State, and local levels to minimize the adverse effects of any type of emergency . . . ." N.C. Gen. Stat. § 166A-19.3(8) (2021). "School buses" may be used for "emergency management activity." N.C. Gen. Stat. §

115C-242(6) (2021). But there is a distinction between "school buses" and other buses, like activity buses. *Irving*, 368 N.C. at 615, 781 S.E.2d at 286 ("Therefore, we must conclude that the General Assembly and the State Board have defined and managed school buses, activity buses, and school transportation service vehicles as distinct categories of vehicles."). The General Assembly defines a "school bus" as a:

> vehicle whose primary purpose is to transport school students over an established route to and from school for the regularly scheduled school day, that is equipped with alternately flashing red lights on the front and rear and a mechanical stop signal, that is painted primarily yellow below the roofline, and that bears the plainly visible words "School Bus" on the front and rear. The term includes a public, private, or parochial vehicle that meets this description.

N.C. Gen. Stat. § 20-4.01(27)(n) (2021).

Here, the record tends to show that Rand drove a "bus" to deliver food to students during the Covid-19 pandemic. During his delivery route, Rand collided with Plaintiff's vehicle, and under the TCA, Plaintiff sued the Board, the owner of the bus. It is undisputed that North Carolina was in a state of emergency during the incident, and *school buses* may be used for "emergency management" activity. *See* N.C. Gen. Stat. § 115C-242(6). Now, the question before us is whether the Board is immune from suit stemming from Rand's alleged negligence.

We start with the premise that, generally, the Board is immune. *See Meyer*, 347 N.C. at 104, 489 S.E.2d at 884. And we acknowledge the TCA clearly waived immunity for school-bus accidents. *See* N.C. Gen. Stat. § 143-300.1(a). That clarity,

- 8 -

however, has faded with the passage of the EMA, which says the State is not liable for injury caused during emergency-management activity. *See* N.C. Gen. Stat. § 166A-19.60(a). The TCA waived immunity, *see Heath*, 282 N.C. at 296, 192 S.E.2d at 310, but the EMA qualified the waiver, *see* N.C. Gen. Stat. § 166A-19.60(a). In other words, school boards may be sued in tort concerning school-bus accidents, but they may not be sued concerning accidents involving school buses used for emergency-management purposes.[3]

In this case, however, it is unclear whether Rand's bus was indeed a "school bus" under N.C. Gen. Stat. § 20-4.01(27)(n). Neither party asserts the "bus" is "equipped with alternately flashing red lights," is "primarily yellow below the roofline," that it "bears the plainly visible words 'School Bus' on the front and rear," or that its "primary purpose is to transport school students." *See* N.C. Gen. Stat. § 20-4.01(27)(n). And because N.C. Gen. Stat. § 115C-242 applies to school buses, it is unclear whether the EMA applies to Rand's conduct, and it is therefore unclear whether the Board maintains sovereign immunity. *See* N.C. Gen. Stat. § 115C-242; *Irving*, 368 N.C. at 615, 781 S.E.2d at 286; N.C. Gen. Stat. § 166A-19.60(a).

In our view, discerning the type of "bus" driven by Rand requires an application of legal principles to the facts, so the question is at least a mix of law and fact. *See*

---

[3] Although we need not reach whether the bus in this case was used for an emergency-management purpose, we think that question is, at least partially, a factual one. *See Rubin*, 277 N.C. App. at 332 n.5, 858 S.E.2d at 392 n.5.

*Rubin*, 277 N.C. App. at 332 n.5, 858 S.E.2d at 392 n.5. Indeed, viewed in a light most favorable to Plaintiff, an answer requires "logical reasoning from the evidentiary facts," so the question tends to be a factual one. *See IPayment, Inc.*, 257 N.C. App. at 315, 808 S.E.2d at 802. Thus, the label of the bus is, at least partly, a remaining issue of fact. *See* N.C. Gen. Stat. § 1A-1, R. 56(c).

Further, the label of Rand's bus is a "material fact" because if the bus was a "school bus" operated for an emergency-management purpose, the Board may maintain sovereign immunity. *See* N.C. Gen. Stat. § 166A-19.60(a). And if it was not a "school bus," the Board likely does not maintain immunity. *See* N.C. Gen. Stat. § 143-300.1(a). Because the bus's label remains unclear, we think the "drastic" measure of summary judgment is improper. *See Kessing*, 278 N.C. at 534, 180 S.E.2d at 830. Therefore, the Commission did not err in denying the Board's motion for summary judgment because an issue of material fact remains. *See* N.C. Gen. Stat. § 1A-1, R. 56(c).

## VI. Conclusion

Accordingly, we hold the Commission did not err in denying the Board's motion for summary judgment.

AFFIRMED.

Judges ZACHARY and MURPHY concur.